127 Cal.Rptr.2d 54 (2002)
103 Cal.App.4th 692
In re JENNIFER A., a Person Coming Under the Juvenile Court Law.
Orange County Social Services Agency, Plaintiff and Respondent,
v.
E. K., Defendant and Appellant; Tony A., Real Party in Interest and Respondent.
No. G030368.
Court of Appeal, Fourth District, Division Three.
November 12, 2002.
As Modified December 11, 2002.
*57 Stephanie M. Davis, under appointment by the Court of Appeal, Marina Del Rey, for Defendant and Appellant.
Lawrence A. Aufill for Real Party in Interest and Respondent.
Benjamin P. de Mayo, County Counsel, and Thomas F. Morse, Deputy County Counsel, for Plaintiff and Respondent.
Paoli & Paoli and Sylvia L. Paoli, under appointment by the Court of Appeal, La Mirada, for the Minor.

OPINION
MOORE, J.
In this mother appeals from the dispositional order removing her daughter from her custody and awarding custody to the child's father. The mother claims the juvenile court violated the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). She argues it erred in going forward with the dependency proceedings when no evidence of service of notice on the appropriate tribes, receipt of notice by the tribes, or any response from the tribes had been filed with the court. The social services agency and the father, on the other hand, contend the ICWA notice provisions are inapplicable because the child ultimately was placed in her father's custody, not in the custody of a foster parent, and the ICWA does not apply to intrafamily disputes.
However, the child was initially removed from her mother and temporarily placed in emergency shelter care and then in foster home care. The fact that the court later ordered the child placed in the custody of her father did not nullify the ICWA notice provisions applicable in involuntary proceedings. Moreover, the marital dissolution exception to the application of the ICWA is itself inapplicable. The mother and father are not married and this is not a custody dispute arising out of a marital dissolution, but rather a proceeding born out of concern for the safety of the child.
We agree with the mother that the social services agency failed to provide to the juvenile court information on which the court could base a decision as to whether proper notice had been given to the Indian tribes and whether the post-notice procedural provisions of the ICWA apply. It also made no determination as to whether, if those provisions apply, the mother has waived their application. We therefore reverse and remand for such determinations.

I

FACTS
On January 7, 2002, the Orange County Social Services Agency (SSA) filed a juvenile dependency petition, asserting Jennifer A. came within the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (b)[1]. Jennifer, then 11 years old, had been living with her mother. According to SSA, Jennifer was frequently left alone with her two-year-old nephew and her *58 mother used methamphetamine on a regular basis.
The detention hearing was held on January 8, 2002, at which time Jennifer was detained at an emergency shelter home. According to her father, the court asked at the detention hearing whether the mother or father had Indian heritage. The mother said she believed she was of Cherokee heritage and the father indicated he believed he was of Yaki heritage. The court ordered SSA to investigate Jennifer's possible Indian heritage and to provide notice to the appropriate tribes. The court also set the matter for trial on January 30, 2002.
On that date, SSA filed its jurisdiction/disposition report in which it stated the ICWA might apply. It reminded the court that Jennifer's mother had stated she might have Cherokee heritage and Jennifer's father had stated he might have Yaki heritage. SSA also stated it had sent notice to both tribes and to the Bureau of Indian Affairs (BIA).
Trial commenced on January 30, 2002, as scheduled. No evidence concerning notice to the tribes or the BIA was presented. The mother states no mention of either the ICWA or any notices was made during the oral proceedings, and the father and SSA generally agree with her characterization of the facts.
When trial commenced, Jennifer continued to live in an emergency shelter home. Jennifer's father, who was not married to her mother, was willing to take Jennifer into his home, but Jennifer did not want to live with him. SSA recommended that Jennifer be declared a dependent child of the court. The court ruled that Jennifer came under Welfare and Institutions Code section 300, subdivision (b) and set the dispositional hearing for February 20, 2002.
In advance of that hearing, SSA filed a report stating Jennifer had been placed in a foster home. SSA recommended against Jennifer being returned to her mother at that time, and stated Jennifer still did not want to live with her father. It recommended that she remain in foster home care, with regular visits with both parents. By order dated February 22, 2002, the court ordered Jennifer declared a dependent child of the Orange County Juvenile Court under Welfare and Institutions Code section 360, subdivision (d). It also ordered that Jennifer's father have custody of her, under the supervision of SSA. The court set the six-month review hearing for August 14, 2002.
Jennifer's mother filed an appeal from the February 22, 2002 dispositional order. She claims the juvenile court erred in failing to apply the notice and other procedural requirements of the ICWA.

II

DISCUSSION

A. Applicability of ICWA Notice Requirements

1. Title 25 United States Code section 1912(a)
Title 25 United States Code section 1912(a) provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention .... No foster care placement or termination of parental rights proceeding shall be held until at least ten days after *59 receipt of notice by the parent or Indian custodian and the tribe...."
According to Jennifer's mother, the requirements of this section were not met. Because SSA's jurisdiction/disposition report informed the court that both the mother and the father claimed to have Indian heritage, the court had "reason to know that an Indian child [was] involved," and was therefore required to ensure compliance with the ICWA notice requirements.[2] Despite this, the mother points out, no copies of notices are contained in the superior court file. There is no proof, she says, that notice was sent by registered mail, return receipt requested, or assuming notice was sent, that the contents of the notice informed the tribes of the proceedings and of their right to intervene.

2. Foster care placement
SSA contends any violation of the ICWA notice requirements was harmless error, for a couple of reasons. For one, it emphasizes the portion of Title 25 United States Code section 1912(a) providing that "[n]o foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by ... the tribe...." SSA maintains the proceedings need not have been delayed on account of notice because there was no foster care placement at issue, inasmuch as the court put Jennifer in the custody of her father.
But this argument ignores the fact that the issue of possible foster care placement was squarely before the juvenile court. In advance of the dispositional hearing, SSA filed a report recommending that Jennifer remain in foster home care. SSA asks us to fixate on the result of the proceedings, i.e., the order that Jennifer be placed in the custody of her father, rather than on the possibility that the court could have ordered continued foster home care. The distinction was addressed in a decision of our sister state court in State ex rel, Juvenile Department of Multnomah County v. Cooke (1987) 88 Or.App. 176, 744 P.2d 596, 598.
In that case, the appellate court stated: "Although the court could have ordered the [child] placed in foster care after finding jurisdiction in this case, it did not do so. Therefore, plaintiff says, the court did not need to follow ICWA procedures and will not need to do so unless there is a later attempt to change the placement of the [child]. In short, plaintiff argues, the actual rather than the potential result of the proceeding should determine the role which the ICWA plays in it. [¶] Plaintiffs argument would require the court to speculate about the outcome of a juvenile proceeding in order to determine what role [the] ICWA would play and would encourage the agency to base its recommended disposition on issues other than the [child's] best interests. It would allow the court and the agency to become deeply involved in the [child's] family while ignoring the requirement that they consider the [child's] cultural heritage. They could avoid providing the required procedural protections until almost the very end of the process, making the ultimate decision a fait accompli." (State ex rel. Juvenile Department of Multnomah County v. Cooke, supra, 744 P.2d at pp. 597-598.)
*60 Jennifer had already been placed in temporary foster home care and SSA recommended that the foster home care continue. At the time the court made its order, it was unknown whether, in the months to come, Jennifer might have been placed in permanent foster home care or whether her mother's parental rights might ultimately have been terminated. Certainly this was an "involuntary proceeding" within the meaning of Title 25 United States Code section 1912(a), and SSA, as the party seeking temporary foster home care, had the obligation to comply with the ICWA notice requirements.
This conclusion is consistent with Title 25 United States Code section 1903(l)(i), which defines the term "foster care placement" as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." Jennifer was temporarily placed in a foster home and SSA was seeking to have the temporary placement continue. Jennifer had been removed from her custodial parent, her mother, who could not have Jennifer returned upon demand. The notice provisions of Title 25 United States Code section 1912(a) apply in involuntary proceedings of this nature.
As summed up in In the Interest of J.R.H. and M.J.H. (Iowa 1984) 358 N.W.2d 311, 321, "A proceeding to determine whether [a child is] in need of assistance due to the mother's unfitness could result in temporary foster home placement of [the] Indian [child] and clearly falls under the ICWA." (Accord, State ex rel. Juvenile Department of Multnomah County v. Cooke, supra, 744 P.2d at p. 598.)

3. Dissolution exception
SSA and Jennifer's father also contend that the ICWA does not apply unless custody is being taken from both parents. It is correct that the ICWA, by its terms, is inapplicable in marital dissolution proceedings.[3] (25 U.S.C. § 1903(1); Adoption of Lindsay C. (1991) 229 Cal.App.3d 404, 408, 280 Cal.Rptr. 194 (Lindsay C); In re Crystal K. (1990) 226 Cal.App.3d 655, 661-662, 276 Cal.Rptr. 619 (Crystal K.).) But this is not a marital dissolution proceeding. Neither SSA nor the father cites any authority applying the dissolution exception when a child is removed from the custodial parent out of safety concerns, and temporarily placed in emergency shelter care, then in foster care, and ultimately in the care of the noncustodial parent, to whom the custodial parent is not married.
In Lindsay C, supra, 229 Cal.App.3d 404, 280 Cal.Rptr. 194, the child was born out of wedlock to an Indian father and a non-Indian mother. When the mother later married and her husband sought to adopt the child, the court declined to extend the dissolution exception in proceedings to terminate the parental rights of the Indian father. The court held the ICWA was clearly applicable, inasmuch as it was clear the child was an Indian child and the termination of parental rights was at issue. (25 U.S.C. § 1912(a).) The court held it was just as clear that "[t]he language of the Act makes but two exceptions: it does not apply to the custody provisions of a [dissolution] decree or to delinquency proceedings. *61 (25 U.S.C. § 1903(1).)" (Lindsay C, supra, 229 Cal.App.3d at p. 408, 280 Cal.Rptr. 194.) Just because the two parents of the child opposed each other in the proceedings, did not mean the dissolution exception applied. The child was born out of wedlock and no dissolution proceedings were taking place.
The court in Crystal K., supra, 226 Cal.App.3d 655, 276 Cal.Rptr. 619 applied a similar analysis and concluded that the ICWA dissolution exception was inapplicable when a non-Indian mother petitioned to terminate the parental rights of the Indian man who was her ex-husband and the father of the child. The Crystal K. court observed, as did the Lindsay C. court, that the statutory scheme included only two exceptions: "(1) custody disputes resulting from [dissolution] proceedings between parents of an Indian child; and (2) placements of Indian children resulting from juvenile delinquency actions. [Citations.]" (Crystal K., supra, 226 Cal. App.3d at p. 662, 276 Cal.Rptr. 619.) As the Crystal K. court further stated, "The excluding language ... on its face means a custody dispute involving a placement in a [dissolution] proceeding. Congress delineated the only exclusions and judicially created exclusions cannot be added. [Citations.]" (Id. at pp. 663-664, 276 Cal.Rptr. 619.) The court rejected the view that the ICWA is inapplicable in all types of "intrafamily custody disputes." Rather, it concluded Congress was obviously aware of the issue of whether the ICWA should apply in all intrafamily custody disputes or only in dissolution proceedings and chose to limit the exception to the dissolution context. (Id. at p. 664, 276 Cal.Rptr. 619.)
The reasoning of Lindsay C, supra, 229 Cal.App.3d 404, 280 Cal.Rptr. 194 and Crystal K, supra, 226 Cal.App.3d 655, 276 Cal.Rptr. 619 is sound. This is not a custody battle arising out of a dissolution proceeding and we cannot apply the dissolution exception to the facts of this case.

B. Notice to Tribes

1. Evidence before the juvenile court
As Jennifer's mother states, the superior court record contains no proof that notice was sent to the tribes, that it was properly served, or that it provided the information required by the ICWA. As she further asserts, SSA should have provided proper documentation to the juvenile court for its determination as to whether the notice requirements of the ICWA had been met. As stated in In re Marinna J. (2001) 90 Cal.App.4th 731, 739-740, footnote 4, 109 Cal.Rptr.2d 267 (Marinna J.): "To satisfy the notice provisions of the Act and to provide a proper record for the juvenile court and appellate courts, [a social services agency] should follow a twostep procedure. First, it should identify any possible tribal affiliations and send proper notice to those entities, return receipt requested. (Rule 1439(f).) Second, [the agency] should provide to the juvenile court a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian entity relevant to the minor's status. If the identity or location of the tribe cannot be determined, the same procedure should be used with respect to the notice to BIA." (See also People ex rel. South Dakota Department of Social Services (S.D.1993) 510 N.W.2d 119, 123-124 [notice to tribe insufficient when record contains no proof that notice was sent by registered mail, return receipt requested].)
This procedure was not followed in the case before us, as it should have been. No evidence regarding notice, receipt of notice, or any responses from the tribes or the BIA was provided to the juvenile court.
*62 This case bears similarity to In re Samuel P. (2002) 99 Cal.App.4th 1259, 121 Cal.Rptr.2d 820 (Samuel P.). In that case, the social worker's report for the jurisdictional hearing stated that a request for confirmation of the children's status had been sent to the tribe. However, the social services agency did not provide the juvenile court with copies of the notices sent or the return receipts received. On appeal, the social services agency requested the court to take judicial notice of a copy of the notices sent and the return receipts received. The court granted the request. Yet it stated: "Since these documents were not provided to the juvenile court, the court did not have a sufficient record from which to make a determination whether there had been compliance with the notice provisions of the ICWA, or whether further inquiry was needed." (Id. at p. 1266, 121 Cal.Rptr.2d 820.)
While in Samuel P., supra, 99 Cal. App.4th 1259, 121 Cal.Rptr.2d 820, the social services agency only alleged that it had sent the tribes a "request for confirmation" of the children's status, in the case before us SSA maintains it sent notices meeting the requirements of the ICWA. However, in this case, as in Samuel P., no evidence was presented to the juvenile court concerning the communications with the tribes. In Samuel P., the social services agency attempted to cure the error by requesting the appellate court to take judicial notice of the documentation that should have been provided to the juvenile court. Here, SSA attempted to cure the error by requesting this court to take additional evidence on appeal. This court, as did the appellate court in Samuel P., took judicial notice of the proffered documentation. Unfortunately, we erred in this regard. SSA moved to introduce evidence on appeal, but did not request judicial notice. Therefore, we vacate our earlier order granting judicial notice. In addition, we deny SSA's motions to take additional evidence on appeal." Making the appellate court the trier of fact is not the solution.
Without knowing whether proper notice was given, and whether any response was received from the tribes, the juvenile court could not knowingly determine whether the remaining provisions of the ICWA applied. (See Samuel P., supra, 99 Cal. App.4th at p. 1266, 121 Cal.Rptr.2d 820.) It could not, for example, ascertain whether to apply the ICWA's heightened standards of proof. (See, e.g., 25 U.S.C. §§ 1912(d) [requiring proof that remedial services designed to prevent breakup of Indian family have been unsuccessful]; 1912(e) [requiring, for foster care placement, clear and convincing evidence, including testimony of qualified expert witnesses, that parent's continued custody of child is likely to result in serious emotional or physical damage to child]; and 1912(f) [requiring, for termination of parental rights, evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that parent's continued custody of child is likely to result in serious emotional or physical damage to child]; see also Cal. Rules of Court, rule 1439(i),(j) & (l).) The juvenile court had no basis for concluding whether to apply or not apply these and other provisions of the ICWA to the remainder of the proceedings.

2. Actual notice
Even were this court to consider the evidence submitted only on appeal, the result would be no different. SSA submitted to this court copies of notices sent to the Cherokee Nation of Oklahoma, to the Round Valley Reservation (Yaki) and to the BIA. It also submitted information tending to show, at best, receipt by the Cherokee Nation on January 23, 2002, by the Round Valley Reservation on January 22, 2002, and by the BIA on January 22, 2002.[4] The jurisdictional hearing took *63 place on January 30, 2002. Therefore, the documentation provided by SSA shows none of the three recipients of the notice had received it 10 days before the hearing, as required by Title 25 United States Code section 1912(a). That provision clearly states: "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by ... the tribe or the Secretary...." In this case, the jurisdictional hearing took place before the 10-day period had expired. "Notice short of 10 days simply does not comply with the [ICWA], technically or substantially." (In re Jonathan D. (2001) 92 Cal.App.4th 105, 111, 111 Cal.Rptr.2d 628 (Jonathan D.).)
SSA and the father each ignore the violation of the 10-day period with respect to the jurisdictional hearing, and focus only on the dispositional hearing. But the violation is not harmless error. (Jonathan D., supra, 92 Cal.App.4th at p. 111, 111 Cal.Rptr.2d 628 [failure to require compliance with ICWA notice requirements is prejudicial error]; In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1424, 285 Cal.Rptr. 507 (Kahlen W.) [same]; see also In re Desiree F. (2000) 83 Cal.App.4th 460, 471-472, 99 Cal.Rptr.2d 688 (Desiree F.) [without proper notice, courts erroneously proceed to determine jurisdiction].) Moreover, having made no determination as to the applicability of the ICWA, it could have made no determination as to whether to apply the heightened standards of the ICWA thereafter, at the dispositional hearing and subsequently.

C. Tribal Determinations
Both SSA and the father view all of this as much-ado-about-nothing. They point to the letter the Cherokee Nation sent to SSA on April 24, 2002, more than two months after the dispositional hearing. In that letter, filed with this court, the Cherokee Nation stated it could not trace Jennifer in its tribal records and would not consider her to be an Indian child within the meaning of the ICWA. As far as the father is concerned, this sews it up, because the determination of a tribe, as to whether a child is a member thereof, is conclusive. (In re Levi U. (2000) 78 Cal. App.4th 191, 198, 92 Cal.Rptr.2d 648 (Levi U.).)
While this is so, we note that the letter from the Cherokee Nation also included the following statement in bold lettering: "This determination is based on the above listed information exactly provided by you. Any incorrect or omitted family documentation could invalidate this determination." We observe that the notice sent to the Cherokee Nation indicated that the birthplaces of the mother and the father were unknown. In addition, it identified the birthplace of Jennifer only as "California." The mother and father were participating in the proceedings and may have been available to provide information about their birthplaces, as well as the birthplace of Jennifer, and it would appear SSA made little effort to provide the tribe with sufficient information for a thorough examination of tribal records. (Cf. Kahlen W., supra, 233 Cal.App.3d at pp. 1422-1423, 285 Cal.Rptr. 507 [names of parents, including birthdate, birthplace, and mother's maiden name required to be provided to BIA].)
SSA and the father also contend that the failure of the Round Valley Reservation to respond to the notice provided is also "tantamount to [a] determination ] that the minor was not an `Indian child' within the meaning of the Act." (Levi U., supra, 78 Cal.App.4th at p. 198, 92 Cal.Rptr.2d 648.) However, we note that the notice sent to the Round Valley Reservation contained the same dearth of information as did the notice to the Cherokee Nation.
*64 In any event, it is up to the juvenile court to review the information concerning the notice given, the timing of the notice, and the response of the tribe, so that it may make a determination as to the applicability of the ICWA, and thereafter comply with all of its provisions, if applicable. To the extent that Levi U., supra, 78 Cal.App.4th at p. 199, 92 Cal.Rptr.2d 648 may be read to imply the juvenile court may proceed without considering these matters[5], we respectfully disagree.

D. Other Issues

1. Standing/waiver of notice to the father's tribe
The father argues that the mother does not have the standing to assert a violation of the ICWA "in reference" to himself. Furthermore, he waives any ICWA-based arguments pertaining to himself. Although not entirely clear, it appears the father's position is that, to the extent the notice requirements were not met with respect to his" tribe (the Yaki tribe), he is waiving that failure because the tribe's rights are based on his lineage. This he cannot do.
"Because the notice requirement is intended, in part, to protect the interests of Indian tribes, it cannot be waived by the parents' failure to raise it." (Marinna J., supra, 90 Cal.App.4th at p. 733, 109 Cal. Rptr.2d 267.) As explained more fully in Desiree F., supra, 83 Cal.App.4th at p. 471, 99 Cal.Rptr.2d 688: "The tribe of an Indian child who is the subject of child custody proceedings may petition any court of competent jurisdiction to invalidate the action upon a showing of a violation of title 25 United States Code section 1912. (25 U.S.C. § 1914.) There is nothing either in the ICWA or the case law interpreting it which enables anyone to waive the tribe's right to notice and right to intervene in child custody matters. (25 U.S.C. § 1912(a); In re Kahlen W.; supra, 233 Cal.App.3d at p. 1422 [285 Cal.Rptr. 507].)" (See also Samuel P., supra, 99 Cal.App.4th at pp. 1267-1268, 121' Cal.Rptr.2d 820.)

2. Waiver of other ICWA procedural requirements
The mother contends that reversal is also required because the juvenile court failed to apply not only the notice provisions of the ICWA, but also the ICWA procedural requirements applicable on the removal of an Indian child from the custody of his or her parent. She mentions the requirement of the presentation of evidence pertaining to the failure of remedial efforts to prevent the breakup of the Indian family. (See 25 U.S.C. § 1912(d); Cal. Rules of Court, rule 1439©.) She also draws attention to the requirement of "qualified expert witness" testimony concerning serious emotional or physical damage to the child if custody by the parent is continued. (See 25 U.S.C. § 1912(e), (f); Cal. Rules of Court, rule 1439(i), (j) & (m).) In addition, she points out that the "qualified expert witness" required by the ICWA is an individual with a particular expertise in the area of Indian child and family services, not simply the social worker assigned to the case, who may have no such expertise. (See Cal. Rules of Court, rule 1439(a)(10); State ex *65 rel. Juvenile Department of Multnomah County v. Cooke, supra, 744 P.2d at p. 597.)
SSA maintains that it is too late for Jennifer's mother to claim foul with respect to the failure of the juvenile court to adhere to these provisions of the ICWA. It argues she waived the application of these provisions by failing to raise the issue before the juvenile court.
Case law is clear that the mother could not waive the ICWA requirements regarding notice to the tribes, any more than the father could. (Marinna J., supra, 90 Cal. App.4th at p. 733, 109 Cal.Rptr.2d 267; Desiree F., supra, 83 Cal.App.4th at p. 471, 99 Cal.Rptr.2d 688.) But this does not mean that it is impossible for her to waive the application of certain provisions of the ICWA not affecting the rights of the tribes.
We discussed the possible waiver of the ICWA standards of proof and requirements for expert testimony in In re Riva M. (1991) 235 Cal.App.3d 403, 286 Cal. Rptr. 592 (Riva M.). In that case we explained: "As a general rule, a party is precluded from urging on appeal any point not raised in the trial court. [Citation.] Any other rule would `"`permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not'" [Citations.]' [Citation.] [¶] A major exception is when the error involves the fundamental jurisdiction of the court to act. [Citation.] The standard of proof and requirement of expert testimony imposed by the ICWA are not such matters. They are included in a statutory scheme created to protect Indian families. While the act's goals are laudable, there is no hint from the statutory language or cases construing it that the procedural standards are constitutionally compelled. [Citation.]" (Riva M., supra, 235 Cal.App.3d at pp. 411-412, 286 Cal. Rptr. 592, fn. omitted.)
Based on Riva M., supra, 235 Cal. App.3d 403, 286 Cal.Rptr. 592, Jennifer's mother had the ability to waive certain procedural standards of the ICWA, but not the provisions requiring notice to the tribes. Even so, she asserts that she did not, in fact, waive the procedural provisions in question. Jennifer's mother asserts that both case law and California Rules of Court, rule 1439(i)(2), (4) provide that a parent will not be held to have waived the ICWA procedural requirements if he or she has not been fully advised of them and therefore cannot have made a knowing, intelligent and voluntary waiver.
She cites Riva M., supra, 235 Cal. App.3d 403, 286 Cal.Rptr. 592, as supporting that proposition. While the court in that case did make some observations about the father's awareness of the potential application of the ICWA, it did not clearly enunciate the exception Jennifer's mother urges us to adopt. Nonetheless, she is correct in her citation to California Rules of Court, rule 1439(i)(2), (4).
California Rules of Court, rule 1439(i) provides in pertinent part as follows: "The court may not order foster care placement of an Indian child ... unless the court finds by clear and convincing evidence that continued custody with the parent or Indian custodian is likely to cause the Indian child serious emotional or physical damage. [¶] ... [¶] (2) Stipulation by the parent or Indian custodian or failure to object may waive the requirement of producing evidence of the likelihood of serious damage only if the court is satisfied that the party has been fully advised of the requirements of the Act, and has knowingly, intelligently, and voluntarily waived *66 them. [¶] ... [¶] (4) In ... order to place an Indian child out of the custody of a parent or Indian custodian, the court must find that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and that these efforts were unsuccessful. Stipulation by the parent or Indian custodian or failure to object may waive the requirement of this finding only if the court is satisfied that the party has been fully advised of the requirements of the Act, and has knowingly, intelligently, and voluntarily waived them...." (See also Kahlen W., supra, 233 Cal.App.3d at p. 1425, 285 Cal. Rptr. 507 [mother did not waive her rights under the ICWA by her silence, since there was no showing she knew the consequences of her and her daughter's Indian status and knowingly relinquished them].)
The mother claims that she did not knowingly, intelligently and voluntarily waive the requirements of the ICWA. This we need not decide. It is up to the juvenile court, after having determined whether the notice provisions were complied with and whether the ICWA applies, to determine also whether the mother's failure to object to compliance with certain procedures of the ICWA was made only after she was fully advised of the requirements of the ICWA and knowingly, intelligently and voluntarily waived those requirements.

III

CONCLUSION
The juvenile court erred in failing to determine whether notice in compliance with the ICWA was provided to the tribes. "In accordance with the ICWA (25 U.S.C. § 1912(a)), all proceedings should have been suspended until a minimum of 10 days after the [tribes] received the notice. This the court did not do." (Desiree F., supra, 83 Cal.App.4th at p. 471, 99 Cal.Rptr.2d 688.) "Notice is `absolutely critical' under the ICWA. [Citation.] ... [T]he failure to provide proper notice is prejudicial error requiring reversal and remand. [Citations.]" (Samuel P., supra, 99 Cal.App.4th at p. 1267, 121 Cal.Rptr.2d 820.)
The closing comments of the court in Desiree F., supra, 83 Cal.App.4th at p. 477, 99 Cal.Rptr.2d 688 bear repeating: "It is our hope that county welfare agencies in future cases will promptly give the statutory notice to Indian tribes whenever there is a possibility that a minor may be subject to the ICWA, juvenile courts will stay proceedings as required until at least 10 days after the notice is received by the tribe, and juvenile courts will promptly inquire and determine compliance with the ICWA." It is our further hope that once the courts have determined the applicability of the ICWA, they will then proceed, as required by law, to adhere to all provisions of the ICWA in cases to which it applies.

IV

DISPOSITION
The orders of the court declaring Jennifer a dependent child of the Orange County Juvenile Court and removing her from her mother's custody and placing her in her father's custody are reversed and the matter is remanded to the juvenile court. Upon remand, the court shall require the presentation of evidence as to the form and content of the notice, and the service upon and receipt of actual notice by the tribes, and of any responses from the tribes. In addition, the court shall make a determination as to whether the notice provisions of the ICWA were satisfied, and if they were, whether the tribes have made a determination as to whether Jennifer is *67 an Indian child. If it is determined that Jennifer is an Indian child, the court shall determine whether Jennifer's mother waived the application of any of the ICWA provisions other than those pertaining to notice. The court shall thereafter apply those provisions of the ICWA that have not been waived.
The juvenile court is directed to conduct a new jurisdictional hearing and, if appropriate, a new dispositional hearing. At the hearing[s], the court shall consider whether changed circumstances, including any that may have arisen during the pendency of this appeal, should affect the outcome. Jennifer shall remain detained under the protective custody of SSA pending new determination] at the hearing[s].
WE CONCUR: O'LEARY, Acting P.J. and ARONSON, J.
NOTES
[1] Welfare and Institutions Code section 300, subdivision (b) provides in pertinent part as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] ... [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, ... or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse...."
[2] SSA makes no argument that the ICWA notice provisions are triggered only when the court has reason to know that the child may be either a member of an Indian tribe, or the biological child of a member of an Indian tribe and eligible for membership in the tribe (see Cal. Rules of Court, rule 1439(a)(1), (d) & (f)), not when the parties have merely made a vague allegation that the child may be of Indian ancestry. Since the distinction was not raised, we do not address it.
[3] Tide 25 United States Code section 1903(1) provides that the term "foster care placement" excludes "a placement based ... upon an award, in a divorce proceeding, of custody to one of the parents." We will nonetheless use the term "dissolution" proceeding, consistent with California family law terminology.
[4] The documentation is unclear or incomplete in certain respects we need not detail here.
[5] The appellate court in Levi U., supra, 78 Cal.App.4th at p. 199, 92 Cal.Rptr.2d 648, stated the juvenile court was not required to make an "express determination" as to whether the ICWA applied. However, it noted that the court had correctly made an implicit determination that the ICWA was inapplicable. (Ibid.) The point of the matter is the court must decide, one way or the other, whether the ICWA applies, so it can proceed in compliance therewith when appropriate.