[No. B177126. Second Dist., Div. Eight. Aug. 22, 2005.]

In re ALEXIS H. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ERNEST S., Defendant and Appellant.

**COUNSEL**

Judy Weisberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**RUBIN, Acting P. J.**—Father Ernest S. appeals from the court's orders declaring his children dependents of the court. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Ernest and Jennifer had two children, Alexis, born in 1996, and Nathaniel, born in 1998. In addition, Jennifer had a third child, Jasmine, born in 2003, with another man who is part of these proceedings, but not part of this appeal.

In February 2004, the Department of Children and Family Services (Department) filed a petition under Welfare and Institutions Code section 300.[1] The petition alleged Jennifer let Jasmine's father use illegal drugs in the house, and that he stored his drugs where the children had access to them. The petition further alleged Jennifer and appellant fought physically in front of the children, and that appellant could not care for his children because he was in prison. The Department recommended that the court declare the children dependents of the court, but permit the children to continue to live with Jennifer. The Department also recommended that appellant receive reunification services, and that both he and Jennifer enroll in parenting classes and counseling.

Jasmine's father and Jennifer entered into a mediated agreement admitting the allegations against them and submitted to the court's jurisdiction. Appellant, however, demanded a contested hearing for the allegations against him. In addition, he claimed Native American descent from both the Cherokee Nation and Apache Tribes, making his children subject to the Indian Child Welfare Act. (25 U.S.C. § 1901 et seq.)

The Department sent notices of the proceedings to the Eastern Band of Cherokee, United Keetoowak Band of Cherokee, Bureau of Indian Affairs regional office in Sacramento, United States Department of Interior, Bureau of Indian Affairs, Tonto Apache Tribe of Arizona, White Mountain Apache Tribe, Yuapi-Apache Nation, Cherokee Nation of Oklahoma, Hcarilla Apache Tribe of New Mexico, Mescalero Apache Tribe New Mexico, San Carlos Apache Tribe, and Fort Sell Apache Tribe of Oklahoma. None of the tribes found the children eligible for tribal membership, and all declined to intervene in the proceedings.

At the contested hearing, appellant argued the evidence of domestic violence between him and Jennifer was insufficient to support dependency

---

[1] All further undesignated section references are to the Welfare and Institutions Code.

court jurisdiction. He also argued evidence of his drug use was likewise too sketchy to support jurisdiction, although he admitted being in prison for drug possession. The court sustained the allegations against appellant, and declared the children dependents of the court. The court placed the children with Jennifer and ordered the Department to provide family maintenance services to her. The court also ordered monitored visitation for appellant while he was in prison, and directed the Department to provide him reunification services. This appeal followed.

## DISCUSSION

### 1. *Any Violation of Indian Child Welfare Act Was Harmless*

Appellant contends we must reverse the court's jurisdictional order because the Department did not comply with the notice provisions of the Indian Child Welfare Act. (25 U.S.C. § 1912(a); see *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267 [121 Cal.Rptr.2d 820].) According to him, the Department's notices to the Cherokee and Apache tribes had, among other defects, incomplete names and birthplaces for the children and incomplete names and inaccurate birthdates for Jennifer and him. The Department largely concedes appellant's description of the notices' flaws, but counters we need not reverse because the notice provisions of the act did not apply. We need not decide the merits of the Department's argument about the inapplicability of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.), however, because the Department's failure to comply fully with the act was harmless error.

■ The Indian Child Welfare Act requires that a Native American tribe receive notice of involuntary dependency proceedings involving children affiliated with that tribe. By its own terms, the act requires notice only when child welfare authorities seek permanent foster care or termination of parental rights; it does not require notice *anytime* a child of possible or actual Native American descent is involved in a dependency proceeding. The act states, "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . ." (25 U.S.C. § 1912(a); see also 25 C.F.R. § 23.11 (2005) [notice requirements when foster placement or termination of parental rights sought].)

■ The notice provision's limited scope coincides with the Indian Child Welfare Act's purpose, which is to preserve Native American culture. The act states, "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian

children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ." (25 U.S.C. § 1902.) When authorities remove a child of Native American descent from his home, the act promotes foster care or adoption by a Native American family in the hope of preserving tribal culture. If, however, authorities do not move the child to another family, the purpose does not come into play. (See, e.g., *In re Christopher I.* (2003) 106 Cal.App.4th 533, 564–565 [131 Cal.Rptr.2d 122] [tribe did not need to receive additional notice before doctors removed life-support from permanently vegetative Indian child because child's condition, rather than lack of notice, frustrated act's purpose, which was preservation of tribal culture]; see also 25 C.F.R. § 23.2 [the act covers child custody proceedings involving foster care and adoption].)

Until 2005, California Rules of Court, rule 1439 pertaining to the Indian Child Welfare Act was broader than the act itself. Former rule 1439(b) stated the act—and presumably the act's notice requirements—applied to "all proceedings . . . including detention hearings [and] jurisdiction hearings" without limiting itself to only those proceedings involving foster care or adoption. Rule 1439 was amended this year, however, to conform the rule to the act. The rule currently states it applies "to all proceedings . . . in which the child is at risk of entering foster care or is in foster care . . . ." Because the Department sought neither foster care nor adoption, the act seemingly does not apply. (But see Welf. & Inst. Code, § 290.1 [requires notice to child's tribe of all dependency proceedings beginning with the initial detention petition; no language limiting notice to only proceedings contemplating foster placement or adoption].)

Appellant ignores the Indian Child Welfare Act's limiting language— possibly because no published decision requires notice for proceedings not seeking foster placement or termination of parental rights. *In re Jennifer A.* (2002) 103 Cal.App.4th 692 [127 Cal.Rptr.2d 54], comes closest, but a careful reading reveals a decision confined to its facts. There, child welfare authorities took a girl from her mother and placed her in an emergency shelter. The girl's parents, who were not married, told the authorities of their Native American heritage, but the authorities did not give proper notice of the proceedings to the parents' tribes. Child welfare authorities thereafter recommended foster care for the child, but the court rejected the recommendation and placed her with her father. (*Id.* at pp. 697–698.)

The mother appealed, arguing the failure to provide proper notice to the tribes required reversal of the court's dispositional order. The child welfare department countered that failing to give notice was harmless error because the court had not placed the child in foster care. (*In re Jennifer A., supra,* 103

Cal.App.4th at p. 699.) The appellate court rejected the department's argument because the department's recommendation of foster care had put such care "squarely before the juvenile court." (*Id.* at p. 700.)

Even if, however, the Indian Child Welfare Act applied to proceedings contemplating nothing more disruptive to an Indian child's home than family reunification services, the defective notices here were harmless error. (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1409–1410 [129 Cal.Rptr.2d 15] [failure to follow act not jurisdictional error, but instead subject to harmless error analysis]; see *In re Brooke C.* (2005) 127 Cal.App.4th 377, 384–385 [25 Cal.Rptr.3d 590].) The Department did not pursue foster care or adoption, instead recommending from the beginning that the children remain with their mother. The court ordered reunification services for both parents, the hope of reunification services by definition being the family's preservation. We are confident, however, that if the Department ever contemplates any additional action which might lead to foster care or adoption, it will ensure that the notices sent to the tribes contain complete and accurate information, including the names and birthplaces for the children and the names and accurate birthdates for mother and appellant.

## 2. *Substantial Evidence Supported Jurisdiction*

█ The court sustained the petition's allegations that the children were at substantial risk of physical harm or illness from, one, appellant's domestic violence in front of them and, two, his inability to care for them because of his history of drug abuse and current imprisonment. (§ 300, subd. (b).) Appellant contends there was insufficient evidence that his behavior put the children at risk. His argument focuses on whether *he* did anything that endangered the children, the evidence of which the juvenile court observed was "meager." His focus ignores, however, that Jennifer's conduct that endangered the children—which she admitted under the mediated settlement—was enough to establish jurisdiction. As *In re Alysha S.* (1996) 51 Cal.App.4th 393 [58 Cal.Rptr.2d 494], explained, "a jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent. [Citation.] This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent. [Citation.]" (*Id.* at p. 397; *In re James C.* (2002) 104 Cal.App.4th 470, 482 [128 Cal.Rptr.2d 270].) Be that as it may, appellant in any event admitted he was in prison for drug possession. While in prison, he cannot care for or supervise his children, rendering his imprisonment enough for the court to exercise jurisdiction under section 300, subdivision (b). (See *In re James C., supra,* 104 Cal.App.4th at p. 482; accord § 300, subd. (g).)

## DISPOSITION

The orders are affirmed.

Boland, J., and Flier, J., concurred.