Filed 11/22/13  In re P.G. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re P.G., a Person Coming Under the Juvenile Court Law. | B248497 (Los Angeles County Super. Ct. No. CK76498) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CARMEN M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles of Los Angeles County.  Marilyn Kading Martinez, Commissioner.  Affirmed.

Nancy O. Flores, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Melinda A. Green, Associate County Counsel, for Plaintiff and Respondent.

_____

In this dependency proceeding (Welf. & Inst. Code, § 300 et seq.),[1] Carmen M. (Mother) appeals from the order terminating her parental rights to her one-year-old daughter. She contends the order must be reversed because the juvenile court failed to determine whether the Indian Child Welfare Act (ICWA), 25 United States Code section 1901 et seq., applies to these proceedings. Mother does not point out any deficiency in the notice the Los Angeles County Department of Children and Family Services (DCFS) sent to the Bureau of Indian Affairs (BIA), the Secretary of the Interior and the tribes Mother identified as possible heritage. Nor does she challenge the propriety of DCFS's statements in its reports that ICWA does not apply. She asks this court to "invalidate[]" the order terminating her parental rights because the juvenile court did not expressly state on the record that ICWA does not apply. She does not challenge the termination of her parental rights on the merits. We find that the juvenile court made an implicit finding ICWA does not apply. Accordingly, we affirm the order terminating parental rights.

## BACKGROUND

On February 15, 2012, DCFS filed a dependency petition under section 300, subdivision (b), alleging that on the day Mother's daughter P.G. was born, Mother and daughter had positive toxicology screens for amphetamine and methamphetamine. The petition also alleged Mother had a three-year history of methamphetamine abuse and failed to reunify with another daughter in prior dependency proceedings due to her substance abuse.

In the February 15, 2012 detention report, DCFS noted a social worker spoke with Mother in person on February 9, 2012 and Mother "denied any Indian Ancestry." On February 10, 2012, Johnny G. (Father)[2] also "denied any Indian Ancestry." On February 15, 2012, Mother and Father each filled out and signed a *Parental Notification of Indian Status* (form ICWA-020), stating they had no Indian ancestry as far as they knew.

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] Father did not appeal from the order terminating his parental rights to P.G. and he is not a party to this appeal.

2

At the detention hearing on February 15, 2012, the juvenile court found that ICWA does not apply to Father. According to the juvenile court's minute order from this hearing, "Mother claim[ed] possible American Indian heritage" at the hearing. The court ordered DCFS to send "notice to said tribe, the Bureau of Indian Affairs and the Secretary of the Interior" and to report the results of such notice to the court.[3] The court ordered P.G. detained in foster care and found that Father was a non-offending parent. At a further detention hearing on February 21, 2012, the court found it would be detrimental to P.G. to be placed with Father due to his criminal history and drug use.

On March 9, 2012, DCFS sent ICWA notice (form ICWA-030) by certified mail with return receipt requested to Mother and Father, the Sacramento Area Director of the BIA, the Secretary of the Interior, eight Apache tribes and one Yaqui tribe. The notice informed the recipients there was a pretrial resolution conference scheduled for March 22, 2012. The notice and certified mail receipts are included in the record on appeal. Mother does not claim DCFS sent notice to the wrong tribes or there is another tribe to which DCFS should have sent notice. Nor does Mother claim DCFS included any incorrect information or omitted necessary information in the notice. Finally, Mother does not claim there was any defect in the mailing of the notice. In short, Mother does not cite any deficiency in the ICWA notice DCFS sent.

In its March 22, 2012 jurisdiction/disposition report, DCFS stated ICWA "does or may apply." DCFS reported that on March 9, 2012 it sent ICWA notice to the Apache and Yaqui tribes by certified mail. DCFS attached copies of the notice and the certified mail receipts to its jurisdiction/disposition report. In the report, DCFS noted neither Mother nor Father had a "fixed address." DCFS stated the social worker did not locate Father until March 5, 2012, and did not locate Mother until March 8, 2012. Therefore, the social worker was unable to send the ICWA notice until March 9, 2012.

---

[3] The record on appeal does not include the reporter's transcript from this February 15, 2012 hearing, so it is not clear what Mother said to the juvenile court or what tribe(s) she identified.

3

On March 22, 2012, DCFS filed a first amended dependency petition under section 300, subdivisions (a) and (b), including allegations about Mother and Father's violent altercations (counts a-1 and b-3), P.G.'s and Mother's positive toxicology screens for amphetamine and methamphetamine at P.G.'s birth (count b-1), Mother's three-year history of methamphetamine abuse and failure to reunify with another child due to her substance abuse (count b-2), Father's extensive criminal history (count b-4), and Mother's emotional problems (count b-5).

At the March 22, 2012 pretrial resolution conference, Mother and Father denied the allegations in the first amended petition. The juvenile court scheduled the jurisdiction/disposition hearing for April 19, 2012. There was no mention of ICWA at this hearing or at any subsequent hearing.

Mother and Father did not appear at the April 19, 2012 jurisdiction/disposition hearing. The juvenile court sustained counts b-1 and b-2 (against Mother), b-3 (against Mother and Father), and b-5, as amended (against Mother). The court dismissed the other counts. The court declared P.G. a dependent of the court and ordered her removed from Mother and Father and placed in DCFS's care for suitable placement. The court granted Mother and Father monitored visitation and reunification services.

In its October 18, 2012 status review report, DCFS stated ICWA does not apply. DCFS reported Mother and Father had not visited P.G. consistently and had not complied with their case plans. Accordingly, DCFS recommended the juvenile court terminate Mother's and Father's reunification services.

At the October 18, 2012 six-month review hearing, the juvenile court set the matter for a contest on December 5, 2012. At the contested hearing on December 5, 2012, the court terminated Mother's and Father's reunification services. Mother did not appear at the contested hearing. Father was present in custody. The court set the matter for a section 366.26 selection and implementation hearing.

In its April 3, 2013 section 366.26 report, DCFS stated ICWA does not apply. DCFS noted the juvenile court made an express finding on February 15, 2012 that ICWA does not apply to Father, but never made a similar finding as to Mother. DCFS reported

4

a dependency investigator/social worker "reviewed the previous minute orders and prior case history" and found no indication Mother is Native American. Moreover, DCFS attached to its section 366.26 report a letter from the Pascua Yaqui Tribe to the juvenile court, dated March 20, 2012, stating P.G. is not eligible for membership and the Tribe will not intervene in these dependency proceedings.

Also in the section 366.26 report, DCFS recommended the juvenile court terminate parental rights. DCFS noted Mother had only visited P.G. three times and it was reported Mother was under the influence at two of the three visits. Father had only visited four times and it was reported Father was under the influence at two of the four visits. P.G.'s caregiver was interested in adopting her and the adoption home study was approved. P.G. had been living with the caregiver since she was released from the hospital after birth.

At the April 3, 2013 section 366.26 hearing, the juvenile court terminated parental rights. The court found by clear and convincing evidence it is likely P.G. will be adopted. Mother appeared at the hearing, but Father did not. There was no mention of ICWA at this hearing.

## DISCUSSION

Mother contends the order terminating parental rights must be reversed because the juvenile court failed to determine whether ICWA applies to these proceedings.

"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe

or the Secretary . . . ." (25 U.S.C. § 1912(a).) The appropriate form of such notice is *Notice of Child Custody Proceeding for Indian Child* (form ICWA-030). (Cal. Rules of Court, rule 5.481(d).)

As discussed above, DCFS sent the requisite notice (form ICWA-030) by certified mail with return receipt requested to Mother and Father, the Sacramento Area Director of the BIA, the Secretary of the Interior, eight Apache tribes and one Yaqui tribe. Mother does not claim there was any deficiency in the ICWA notice. Mother faults the juvenile court for failing to order DCFS to send additional ICWA notices regarding subsequent hearings, including the April 3, 2013 section 366.26 hearing. It is not clear why Mother takes this position when she has cited no deficiency in the ICWA notice DCFS sent on March 9, 2012.

The juvenile court must determine whether ICWA applies, but its finding "may be either express or implied." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.) "[A]n implicit ruling suffices, at least as long as the reviewing court can be confident that the juvenile court considered the issue and there is no question but that an explicit ruling would conform to the implicit one." (*In re E.W.* (2009) 170 Cal.App.4th 396, 405 ["Here the social worker's reports specifically discussed the ICWA issue and included documentation of the notices sent and the negative responses received from the tribes. Given the several reports . . . specifically discussing the ICWA issue and repeatedly noting that ICWA 'does not apply,' the record reflects an implicit finding concerning the applicability of the ICWA"].) We review the juvenile court's ICWA finding, whether express or implied, for substantial evidence. (*Id*. at p. 404.)

Mother argues the juvenile court did not consider the ICWA issue despite evidence in the record demonstrating (1) the court ordered DCFS to send ICWA notice, (2) DCFS attached the March 9, 2012 ICWA notice and return receipts to the March 22, 2012 jurisdiction/disposition report filed with the court, (3) on March 20, 2012, the Pascua Yaqui tribe sent the court a letter stating P.G. is not eligible for membership and DCFS attached this letter to its April 3, 2013 section 366.26 report, and (4) DCFS stated ICWA does not apply in its October 18, 2012 status review report and April 3, 2013

6

section 366.26 report, both filed with the court.  There is no evidence in the record indicating ICWA applies here.  Based on the information included with DCFS's reports and filed with the court, we are confident the court considered the issue and made an implicit finding ICWA does not apply.  (Compare *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 702, 703 [where "the superior court record contain[ed] no proof that notice was sent to the tribes, that it was properly served, or that it provided the information required by the ICWA," the "juvenile court could not knowingly determine whether the remaining provisions of the ICWA applied" and the appellate court could not conclude the juvenile court considered the issue].)

Mother asserts it is evident the juvenile court never considered the issue because DCFS stated in its April 3, 2013 section 366.26 report, the "[c]ourt has not made an ICWA finding as to mother."  We do not read DCFS's statement to mean the court never considered the issue or made an implicit finding.  We read DCFS's statement as a reminder to the court it had not made an *explicit* finding as to Mother that ICWA does not apply.  While it would be best if courts made explicit ICWA findings, implicit findings will suffice when the evidence shows the court considered the issue as is the case here.

### DISPOSITION

The April 3, 2013 order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


MALLANO, P. J.


ROTHSCHILD, J.

7