Filed 4/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. S.T., Defendant and Appellant. | A160454 (Sonoma County Super. Ct. No. 6034DEP) |

This case involves the intersection of two statutory schemes relevant to child custody adjudications: the Indian Child Welfare Act (ICWA) and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). We hold the juvenile court properly applied the UCCJEA and dismissed the dependency action in favor of family court proceedings in Washington state after finding ICWA inapplicable because the child had been placed with his non-offending parent.

Here, the juvenile court asserted emergency jurisdiction over seven-year-old A.T., whose mentally ill mother had taken him from Washington state to California in violation of Washington family court orders. The court detained A.T., placed him temporarily with his father in Washington, and

1

initiated contact with the Washington family court to address which state had jurisdiction under the UCCJEA. In the meantime, the Wiyot Tribe (the Tribe) intervened and, with A.T.'s mother (Mother), asserted ICWA required the court to retain jurisdiction in California.

The juvenile court determined ICWA was inapplicable and that the Washington family court had continuing exclusive jurisdiction. Accordingly, it dismissed the dependency action in favor of the family court proceedings in Washington. On appeal, Mother contends the court erred in finding ICWA inapplicable and dismissing the dependency case without returning A.T. to her custody. We disagree. The juvenile court correctly discerned and applied the law in a legally and procedurally complex situation. We affirm.

## BACKGROUND

A.T. lived in Washington with his parents until some point before the events concerned here. Mother had a history of mental instability, paranoia and schizophrenia. In August 2017 she was diagnosed with anxiety disorder, unspecified and delusional disorder; two years later she was diagnosed with acute post-traumatic stress disorder with persecutory delusions, somatic delusions and disorganized thinking, with a differential diagnosis of schizophrenia. The family had a CPS history in Washington dating back to 2015, due in part to Mother's mental health issues, and Father had been arrested on charges related to a domestic violence incident in 2007 or 2009.

Mother and Father divorced in May 2019, when A.T. was almost seven years old, and the Washington family court awarded Mother custody with visitation for Father. The following month Mother took A.T. to California in violation of the family court's orders. The two spent the next four months staying in the homes of various friends, family members, motels, and her car.

2

In September 2019 Mother and A.T. came to the attention of the Mendocino County social services agency after someone reported Mother was struggling with significant mental health issues. The Sonoma County Human Services Department[1] (the Department) investigated and reported that Mother was suffering from "a multitude of mental health symptoms including paranoia, delusions and disorganized thinking that have gone untreated due to her inability to trust anyone. . . . Due to the mother's mental health issues, young [A.T.] is at high risk of physical harm and death. He is also at risk of severe emotional harm due to the constant exposure to his mother's delusional thought process."

On October 24, 2019, the Department filed a "non-detain" petition in the Sonoma County juvenile court alleging A.T. was suffering or at risk of serious physical and emotional harm due to Mother's mental health issues.[2] Mother was an enrolled member of the Yurok Tribe, but A.T was ineligible for enrollment because he did not meet the tribe's blood quantum requirement.

Father reported that Mother had been exhibiting mental health symptoms for about two years. He was concerned for A.T.'s safety due to her ongoing delusions. He "also understands why the Department needs further assessment on him, due to the father having been arrested prior for domestic violence in 2007 or 2009 as reported by himself to the undersigned, and the mother being awarded full custody by the Superior Court in Washington

[1] The case was initiated in Mendocino County but was transferred after Mother relocated to Sonoma.

[2] An additional allegation that Father failed to protect A.T. by allowing him to remain in Mother's care was deleted when the petition was amended in November 2019.

State, and the father stating he has only been sober for a month." Mother filed an ICWA-020 form claiming Yurok and Wiyot ancestry.

A contested detention hearing was held on October 25, 2019. The Department believed Mother could safely care for A.T. despite her mental health problems and did not seek to remove him from her custody. A.T.'s appointed counsel disagreed. She explained, "It's clear that mother absolutely loves [A.T.], and I don't think that she would intentionally cause him harm. But he's only seven years old, and he has been under this constant emotional stress and wrapped up consistently and being really constantly subjected to what [the Department] is talking about, the untreated mental health issues, the potential substance use, vehicle[] accident[s]." Moreover, "[A.T.] and his mother have had to leave multiple residences of family and friends who, as adults, cannot handle mother's behavior. And yet we're asking a seven-year-old child to be able to manage that behavior on his own."

Father asked to be assessed for placement and informed the court that the family court in Washington had set an October 30, 2019 contempt hearing to address Mother's absconding to California with A.T. in violation of its orders. The juvenile court found there were no reasonable means to protect A.T. without removing him from Mother's custody. A.T. was detained and temporarily placed with a maternal aunt in Sonoma County.

A jurisdiction/disposition hearing was scheduled for November 20, 2019. On that date, the Department requested a continuance to allow the juvenile court to consult the Washington court regarding the appropriate jurisdiction for the case. The Department asked that A.T. be placed with Father on an extended trial visit pending the next hearing. Father had issues with alcohol, but he had been sober for over two months, was willing to

4

attend recovery meetings, and would be subject to a safety plan requiring him to maintain sobriety and submit to testing. The Department's recommended disposition, "when we get there," was to place A.T. with Father and dismiss the dependency case.

Father's attorney reported that in the interim the Washington family court had found Mother in contempt, issued a restraining order against her, and ordered her to return A.T. to Father's care in Washington. The juvenile court advised the parties it would contact the judge in Washington to address which state had jurisdiction and granted the Department's request that A.T. be permitted to stay with Father in the meantime.

On December 11, 2019, the juvenile court informed the parties that it had not yet been able to speak with the Washington judge. It continued A.T.'s temporary placement with Father and scheduled the next hearing for December 20.

On that date the Wiyot Tribe intervened in the dependency case. Gary Markussen appeared as tribal representative, confirmed that A.T. was eligible for enrollment in the Tribe, and requested a continuance to obtain more information. Despite numerous attempts, the juvenile court had not yet been able to speak with the Washington judge. The hearing was continued to January 16, 2020. On December 24, 2019, the Department sent ICWA notices to potentially involved tribes, the federal Department of the Interior and the state Bureau of Indian Affairs.

When the proceedings resumed on January 16, 2020, the juvenile court informed the parties it had conferred with the Washington family court and determined Washington had exclusive jurisdiction over the case. The court asked the parties to address how to proceed: "1. Should we establish jurisdiction, make the child a dependent and then transfer? [¶] 2. Should we

5

dismiss the petition and leave the child with the father? [¶] 3. What is the effect of the Wiyot Tribal intervention filed on December 20?"

The Department urged the court to dismiss the case in favor of jurisdiction in Washington. As to the Tribe's intervention, it asserted A.T. was not an "Indian child" within the meaning of ICWA because Mother was not a member of the Tribe and A.T. was placed with Father. A.T. and Father also asked that the case be dismissed in favor of the family court proceedings in Washington. Mother and the Tribe asserted ICWA applied and asked the court to retain the case in Sonoma County.[3] The court directed the parties to brief the applicability and effect of ICWA on the dependency proceedings.

In a February 24, 2020 addendum, the Department reported A.T. was doing well in Father's care and confirmed its recommendation that he be placed with Father and the dependency case be dismissed.

On April 30, 2020, after considering the parties' written and oral arguments, the court ruled ICWA was inapplicable for two independent reasons. First, A.T. was not an "Indian child" as defined by ICWA because, although he was eligible for membership in the Wiyot Tribe, Mother was not an enrolled member. Second, the court explained, "[t]his is a custody case in which the child . . . was not removed from the non offending parent. The child is with the non offending parent which takes this out of ICWA." The court dismissed the dependency case, observing that A.T. would remain with Father "[a]nd mother, when she is available, can go back to Washington and work on the custody orders."

Mother filed this timely appeal.

---

[3] Mother disclosed at this hearing that she had moved to Humboldt County and no longer lived in Sonoma.

## DISCUSSION

Mother contends the juvenile court should have found ICWA applied and precluded it from dismissing the dependency case pursuant to the UCCJEA. Father and the Department assert the court correctly found ICWA inapplicable because A.T.'s case was an emergency proceeding, not a "child custody proceeding" as defined by and subject to ICWA; A.T. is not an "Indian child" within the meaning of ICWA; and he was placed with a parent. The resolution requires us to review the interpretation and application of statutory law to undisputed facts, so our review is de novo. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 9-10; *McLear-Gary v. Scott* (2018) 25 Cal.App.5th 145, 152.)

Mother does not seem to dispute that, if ICWA does not apply, the court properly dismissed the dependency case pursuant to the UCCJEA in favor of the preexisting Washington state forum. "The Act is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions . . . ." (*In re C.T.* (2002) 100 Cal.App.4th 101, 106.) However, child custody proceedings are not subject to the UCCJEA "to the extent . . . governed by" ICWA (Fam. Code, § 3404, subd. (a))[4] and, if ICWA is applicable, it must be applied where it provides a "higher standard of protection" of the parent or Indian custodian's rights than state law affords. (25 U.S.C. § 1921.) Mother contends it applies here, and required the juvenile court to retain the dependency proceedings in California subject to ICWA's "active efforts, and the benefit of the heightened legal standards . . .

---

[4] "A child custody proceeding that pertains to an Indian child as defined in the Indian Child Welfare Act (25 U.S.C. 1901 et seq.) is not subject to this part to the extent that it is governed by the Indian Child Welfare Act." (Fam. Code, § 3404, subd. (a).)

7

than if the UCCJEA were applied to transfer the case to the Washington divorce court." We disagree.

Although ICWA empowers an Indian child's tribe to intervene in any "Indian child custody proceeding," (§§ 224, subd. (b), 224.4[5]; 25 U.S.C. § 1911, subd. (c)), it is not implicated in every dependency case in which the child may have some degree of Native American heritage. "An 'Indian child custody proceeding' . . . is defined by section 224.1, subdivision [(d)] as 'a "child custody proceeding" within the meaning of Section 1903 of [ICWA], including a proceeding for temporary or long-term foster care or guardianship placement, termination of parental rights, preadoptive placement after termination of parental rights, or adoptive placement.' This list does not include a proceeding in which a dependent child is removed from one parent and placed with the other. Similarly, the ICWA definition referenced in section 224.1 (section 1903 of ICWA) does not refer to placement with a noncustodial parent. By expressly including certain placements, the Legislature impliedly excluded others, such as placement with a parent. [Citations]. If the Legislature intended to include placement with a parent, we assume it would have expressly done so by adding it to the list." (*In re J.B.* (2009) 178 Cal.App.4th 751, 757-758; *In re K.L.* (2018) 27 Cal.App.5th 332, 336; *In re M.R.* (2017) 7 Cal.App.5th 886, 904-905.)

Our conclusion that ICWA does not apply when an Indian child is removed from one parent and placed with another "comports with the legislative intent behind the ICWA, as well as the related California statutory scheme, which expressly focus on 'the removal of Indian children from their homes and parents, and placement in foster or adoptive homes.' "

---

[5] Unless otherwise noted**,** further citations to California statutes are to the Welfare & Institutions Code.

(*In re K.L., supra,* 27 Cal.App.5th at p. 336; *In re J.B., supra,* 178 Cal.App.4th at pp. 759-760.) The juvenile court correctly applied it here.

Mother does not agree. Citing federal regulations and guidelines that state ICWA requirements apply to any action that "may" result or "may" culminate in a foster or adoptive placement, even if it ultimately does not, she contends A.T.'s placement with Father is not dispositive because the dependency case *could* have resulted in one of those outcomes.[6] She relies primarily on *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 698, 700, in which the child was initially placed in temporary foster care and the social welfare agency advocated at disposition that she remain in foster care. As the court of appeal recognized, under those circumstances the possibility of a foster care placement was "squarely before the juvenile court," and, accordingly, ICWA applied even though the court ultimately placed the child with her nonoffending parent. (*Id.* at pp. 700-701.)

This is a very different case. Neither the court, the Department, nor any other party sought to have A.T. placed in foster care or pursued any placement other than with Father.[7] *In re Jennifer A.* is thus plainly distinguishable. It has also been expressly confined to its facts (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 15), and Mother points us to no cases holding

---

[6] Section 224.1, subdivision (d)(1) incorporates this concept in defining "Indian child custody proceeding" as a hearing "involving an Indian child . . . that may culminate in" foster care, termination of parental rights, or adoptive or preadoptive placement.

[7] We observe that Mother's counsel incorrectly claims without citation to the record that A.T.'s appointed counsel, the Department and the Tribe advocated, and the court ordered, foster care.

ICWA applicable due to a merely theoretical possibility that a parental placement pursued by the social welfare agency could fall through.[8]

Finally, as we understand her argument, Mother asserts that, never having established dependency jurisdiction over A.T., the juvenile court had no authority to award Father post-dismissal custody. (See *In re Gino C.* (2014) 224 Cal.App.4th 959, 965-966 ["temporary emergency jurisdiction does not confer authority to make a permanent child custody determination"].) The court made no such order. Father was awarded custody in the Washington family court action. After A.T. was detained in California, the juvenile court temporarily placed him with Father in the exercise of its emergency jurisdiction under the UCCJEA. When the juvenile court later terminated the California dependency case in favor of the Washington family court proceedings, A.T. remained subject to the existing Washington custody orders. Mother's apparent point that the California court lacked jurisdiction to make a permanent custody award is therefore correct (see *In re C.T., supra,* 100 Cal.App.4th at pp. 112-114 [juvenile court properly terminated emergency jurisdiction in favor of state court that issued initial custody order]) but irrelevant here.

Because the juvenile court correctly found that ICWA was inapplicable because A.T. was placed with Father, we will not address Mother's further contentions that it erred in finding A.T. is not an "Indian child" as defined by ICWA or that ICWA required the court to restore him to Mother's custody

---

[8] Mother does not appear to contend A.T.'s initial emergency detention with a maternal relative before he was placed with Father brings this case into line with *In re Jennifer A.* Nor would we find such a contention persuasive. (See *In re K.L., supra,* 27 Cal.App.5th at pp. 916-919 [compliance with ICWA not required where child was placed with nonoffending parent after temporary detention in nonrelative foster home].)

upon dismissing the dependency case.  In sum, ICWA did not apply, so the court properly applied the UCCJEA and dismissed the action in favor of the Washington family court proceedings.

## DISPOSITION

The order dismissing the dependency action is affirmed.  The Department's motion to dismiss the appeal is denied as moot.

_____
Wiseman, J.*

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.

*In re A.T.*, A160454

_____

    * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                            Sonoma County Superior Court

Trial Judge:                         Hon. Jamie E. Thistlethwaite

Counsel:

Robert H. Pittman, Sonoma County Counsel, Rachel M. Bavis, Deputy County Counsel, for Respondent Sonoma County Human Services Department.

Law Office of Robert McLaughlin and Robert McLaughlin, for Respondent J.T.

Gorman Law Office, Seth F. Gorman by appointment of the Court of Appeal through the First District Appellate Project, for Appellant.