Filed 6/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> G.V., <br><br> Defendant and Appellant. | G061025 <br><br> (Super. Ct. No. 20DP1391) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert Gerard, Judge. Conditionally reversed and remanded with instructions. Motion to take new evidence denied.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

G.V. (Father) appeals from the juvenile court's judgment terminating his parental rights as to his newborn daughter (E.V.) and selecting adoption as the permanent plan. He raises the following issue on appeal: The court and the Orange County Social Services Agency (SSA) failed to adequately inquire into the child's Indian ancestry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). SSA concedes there were two errors with respect to duties under ICWA, but they were harmless. Alternatively, SSA moves this court to receive additional new evidence (not before the juvenile court) that allegedly renders the appeal moot, or at least demonstrates any inquiry errors as to ICWA must be deemed harmless. We deny the motion. In the case of *In re A.R.* (2022) 77 Cal.App.5th 197 (*A.R.*), this court established a clear rule that requires reversal in all cases where the ICWA inquiry rules were not followed. County counsel has misconstrued the *A.R.* opinion as advising SSA to promptly address any defects and inviting SSA to submit evidence of its belated efforts to avoid reversal of the judgment. The Court of Appeal is not the appropriate venue for determining if SSA's postjudgment investigation was adequate. Moreover, Father's appellate claims relate to both SSA's and the court's errors regarding ICWA. The additional evidence is not dispositive of Father's appellate claims regarding court error. We conditionally reverse the judgment and remand for compliance with ICWA.

FACTS[1]

SSA took the minor into protective custody in October 2020, shortly after her birth. She and her mother (Mother) tested positive for amphetamines. Father was incarcerated and unable to care for the minor. The detention report, dated November 6, 2020, stated Mother and Father "denied any Native American ancestry at this time."

---

[1]     Our summary of the facts is limited to those needed for resolution of the ICWA issues raised on appeal and to provide relevant context.

2

The petition raised allegations under Welfare and Institutions Code section 300, subdivision (b) [failure to protect].[2] It described Mother's and Father's criminal histories and unresolved substance abuse problems. Father had a domestic violence conviction. Mother lost custody of two other children, due to her substance abuse, and she no longer had contact with them. E.V.'s half-siblings lived with legal guardians, their paternal grandparents.

A social worker attached an ICWA-010 form to the petition, indicating she was unable to complete the inquiry about the minor's Indian status with Father because he was incarcerated. The social worker noted Mother gave her "no reason to believe the child is or may be an Indian child." No further explanation was provided.

The assigned social worker determined E.V. could not be placed with the legal guardians of the minor's older half-siblings. The social worker also spoke with the minor's maternal great-aunt, C.P., about possible placement. SSA held a team meeting to discuss a plan for E.V. Mother, the minor's maternal grandmother, and a family friend attended the meeting. There was no discussion or inquiry about Native American heritage.

By the time of the detention hearing on November 9. 2020, the minor was living with C.P. and Father wanted his sister (R.V.) to be assessed for placement. The court's minute order stated, "Court orders . . . [ICWA] finding deferred." The hearing was continued, and the court considered the parties' arguments through video conference software. At the hearing, Father's counsel stated his client did not "have [ICWA]." Mother's counsel requested that the court defer the issue because Mother was not attending the video hearing.

---

[2] All further statutory references are to the Welfare and Institutions Code.

3

In the social worker's jurisdiction/disposition report dated November 30, 2020, she reported both parents denied Native American ancestry. In the report, the social worker mentioned C.P. was a good placement for the minor. She had previously adopted the E.V.'s two cousins from Mother's adult sister (Maternal Aunt). The social worker reported on SSA's investigation of possible placements with relatives, but did not mention any ICWA inquiry with those family members.

In January 2021, the court held the jurisdiction hearing and sustained the petition. The court removed E.V. from her parents' custody and ordered reunification services. The court did not address ICWA on the record. Its minute order also failed to mention ICWA. However, the court indicated it was adopting SSA's recommendations, which were attached to the minute order. Those recommendations indicated ICWA did not apply.

The social worker's April 2021 interim report contained no new information regarding ICWA. The social worker merely noted, "On November 9, 2020, ICWA was reserved." Due to Covid-19 related court closures, the court accepted the appointed attorneys' written stipulation waiving their appearance. Based on the stipulation, the court continued reunification services. It made no ICWA findings.

In July 2021, the social worker prepared a report for the six-month review hearing and recommended additional reunification services for Mother. The social worker also requested the court terminate services for Father and ordered ICWA did not apply. The social worker again noted ICWA "was reserved" in November 2020. The report contained no new information regarding ICWA.

At the six-month review hearing, the court's minute order stated it read and considered the signed stipulation. The court stated it would make orders and findings pursuant to the signed stipulation and ICWA did not apply. It scheduled a hearing on the matter for August 2021. The attached stipulation noted ICWA did not apply.

4

Before the hearing, the social worker filed addendum reports changing her previous recommendation regarding services. She requested that the court terminate the parents' reunification services and schedule a permanency hearing. These reports do not mention ICWA.

The court's minute order for the six-month review hearing noted the court was making orders and findings pursuant to the stipulation signed August 11, 2021. The attached stipulation noted ICWA did not apply. The hearing was continued.

The social worker's next addendum report for the six-month review hearing noted E.V. was nine months old. The recommendation to terminate parental rights was not changed. The report does not mention ICWA.

After a short continuance, the court held the review hearing in September 2021. The court terminated reunification services and scheduled a permanency hearing. The court did not address ICWA on the record or in its minute order. Rather, the minute order stated the court was making "orders and findings" pursuant to the proposed orders and findings filed September 10, 2021. The proposed orders, signed by counsel, left unchecked all the boxes related to ICWA documentation and findings.

On January 10, 2022, the social worker prepared a final report regarding then one-year-old E.V. The summary recommendation stated the minor was adoptable and the court should terminate parental rights and free her for adoption. E.V.'s caretakers wished to adopt her. In addition, the social worker requested the court "find ICWA does not apply in regard to the child." Later in her report, the social worker explained that early in the case both parents denied Native American ancestry but the court reserved the issue on November 9, 2020. Before writing her report, the social worker asked Father about ICWA and he replied, "'I'm not too sure, so I can't really answer that.'" The social worker tried to contact Mother two times to discuss ICWA, but she had failed to reply.

5

At the permanency hearing, the court denied the parents' continuance requests and terminated their parental rights. It freed E.V. for adoption. The minute order stated, "[The c]ourt finds [ICWA] does not apply" but the reporter's transcript reflects the court did not mention ICWA at the hearing.

DISCUSSION

I. *Reversible Error*

A different panel of this court recently considered an appeal raising ICWA issues remarkably similar to the ones before us. (*A.R., supra,* 77 Cal.App.5th 197.) In that case, county counsel conceded SSA erred by failing to conduct an adequate inquiry into whether the dependent minors had Native American ancestry. (*Id.* at p. 201.) County counsel maintained the judgment should be affirmed because the mother failed to demonstrate the error resulted in a manifest miscarriage of justice. (*Ibid.*)

In *A.R.,* this court held, which bears repeating, the following: "The interests protected by ICWA include the broad interest of Native American tribes in maintaining cultural connections with children of Native American ancestry. Those tribes have no standing to intervene in a dependency case unless Native American ancestry is first uncovered and established, and thus no way of protecting their tribal interests unless child welfare agencies comply with ICWA and then notify the appropriate tribe when the inquiry reveals Native American ancestry. [¶] That is why the law requires that an ICWA inquiry be conducted in *every* case. The tribes have a compelling, legally protected interest in the inquiry itself. It is only by ensuring that the issue of Native American ancestry is addressed in every case that we can ensure the collective interests of the Native American tribes will be protected. Thus, the failure to conduct the inquiry in each case constitutes a miscarriage of justice. [¶] What troubles us about county counsel's position, and by extension, SSA's, is that it seems to reflect a belief that the inquiry into Native American ancestry is not important. That cannot be the case. Until the inquiry is conducted, and the issue is put to rest, the interests of the Native American tribes have

6

not been adequately protected, and the judgment in this case would remain vulnerable to a potential collateral attack. [¶] The required inquiry here could have been conducted in significantly less time than it took to defend this appeal." (*A.R., supra,* 77 Cal.App.5th at pp. 201-202.)

*A.R.* is but one of many published cases involving errors regarding the required ICWA inquiries. Although the law is well settled, this particular problem keeps surfacing in appeals with alarming frequency. As discussed in *A.R.,* the published cases discussing whether the error is reversable "fall into three groups." (*A.R., supra,* 77 Cal.App.5th at p. 205.) "[T]he first concludes that the conceded error warrants reversal in every case because the duty to inquire was mandatory and unconditional. [Citations.] [¶] . . . [¶] The second group concludes that the error does not warrant reversal unless a 'miscarriage of justice' is demonstrated to have occurred as a consequence of the failure to inquire about Native American heritage. [Citations.] . . . [¶] The third option is the self-described 'middle ground' approach taken in [*In re*] *Benjamin M.* [(2021) 70 Cal.App.5th] 735, in which the appellate court would determine, on a case by case basis, whether the record reflects there are known relatives identified by the child welfare agency, who appear to have been able to shed light on the issue of Native American heritage." (*Ibid.*)

This court determined there were problems with all of these approaches. (*A.R., supra,* 77 Cal.App.5th at pp. 205-206 [analysis rejecting each option].) "In our view, the correct approach is to focus on the wider interest at play—i.e., the federal and state public policy of ensuring that potential Native American heritage is considered, and thus inquired about, in every dependency case." (*Id.* at p. 206.) Adopting "a rule requiring reversal in all cases where ICWA requirements have been ignored is consistent with the recognition that parents are effectively acting as 'surrogate[s]' for the interests of Native American tribes when raising this issue on appeal. . . . '[A]ppellate review of procedures and rulings that are preserved for review irrespective of any action or inaction

7

on the part of the parent should not be derailed simply because the parent is unable to produce an adequate record.' [Citation.] [¶] Any other rule would potentially make enforcement of the tribes' rights dependent on the quality of the parents' effort on appeal. That would be inconsistent with the statutory schemes which place that responsibility squarely on the courts and child welfare agencies. Stated plainly, it is the obligation of the government, not the parents in individual cases, to ensure the tribes' interests are considered and protected." (*A.R., supra,* 77 Cal.App.5th at p. 207.) In the *A.R.* case, this court conditionally reversed the judgment with instructions for SSA and the juvenile court to conduct an initial ICWA inquiry as soon as possible.

Thus, in this case we follow our reasoning in *A.R.* and adopt a clear rule of reversal because, as county counsel concedes, several ICWA inquiry rules were not followed. "The duty to inquire in *every* case is the key to" protection of the tribes' interests. (*A.R., supra,* 77 Cal.App.5th at p. 207.) For the reasons stated in *A.R.,* we reject county counsel's argument Father must show prejudice from the lack of initial inquiry. Father's failure to make affirmative representation about possible Indian heritage does not render the error harmless.

We note county counsel's concession in this case extends only to recognizing SSA erred with respect to its duties to contact *extended family* members. It argues the court satisfied inquiry requirements with respect to *the minor's parents*, and even if there was a small error, it was harmless. We disagree with the notion this error can be disregarded, and we are also not convinced SSA's errors and the court's errors were insignificant.

As county counsel acknowledges, the court failed to obtain Parental Notification of Indian Status (form ICWA-020) and did not ask the parents questions about their heritage on the record as required by the California Rules of Court, rule 5.481, and section 244.2, subdivision (c). It argues "these minor irregularities were harmless" because both parents denied Indian heritage on the record. However, the cited record

references "to the record" are to portions of the clerk's transcript containing the social worker's reports. The *court* did not ask either parent on "the record" about American Indian ancestry or ask them to complete the ICWA-020 form.

"[S]ection 224.2 creates three distinct duties regarding ICWA." (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) County Counsel's record references related to the first duty, arising during SSA's initial contact with the minor and her family. (§ 224.2, subds. (a), (b) [duty of inquiry to ask all involved persons whether child may be an Indian child].) A second duty arises if that initial inquiry creates a "reason to believe" the child has American Indian ancestry. The third duty, discussed in section 224.2 subdivision (c), provides, "At the first appearance *in court* of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (Italics added.)

The court is obligated to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Thus, SSA's evidence that social workers asked the parents about their American Indian heritage during interviews (§ 224.2, subds. (a), (b)), does not satisfy the court's duty under section 224.2, subdivision (c), to ask the parents about their heritage on the record. Moreover, California Rules of Court, rule 5.481(a)(2), clearly provides that at the first appearance, the court must ask the participants about the child's American Indian heritage and "[o]rder the parent, Indian custodian, or guardian, if available, to complete *Parental Notification of Indian Status (form ICWA-020)*." And "[i]f the parent . . . does not appear at the first hearing, or is unavailable at the initiation of a proceeding, the court must order the person or entity that has the inquiry duty under this rule to use reasonable diligence to find and inform the parent . . . that the court has ordered the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court, Rule 5.481(a)(3).)

9

We found no ICWA-020 forms in our record on appeal. The reporter's transcript does not reflect the court asked the parties about E.V.'s American Indian heritage. This error cannot be remedied by evidence the social worker performed her duty under section 224.2, subdivision (a), to ask questions about American Indian heritage when interviewing the parents. We found no authority, and county counsel cites to none, holding the court can delegate its duty to a social worker.

County counsel's argument also ignores Father's statement to the social worker that he was "not too sure" about his heritage or his later assertion he had Apache tribe relatives. Contrary to county counsel's contention, Father did not consistently deny American Indian heritage. The judicial counsel developed ICWA-010 form, to assist SSA with its initial duty of inquiry (§ 224.2, subds. (a)). California Rules of Court, rule 5.481(a)(1) provides SSA must ask the parents and extended family members about American Indian ancestry "and must complete the *Indian Child Inquiry Attachment* (form ICWA-010(A)) and attach it to the petition unless the party is filing a subsequent petition and there is no new information." It was error not to follow these rules.

II. *Motion to Take Additional Evidence*

Seeking an affirmance, county counsel moves this court to receive additional evidence not before the juvenile court that allegedly demonstrates ICWA did not apply, or alternatively any error was harmless. It asserts this court in *A.R.* suggested an appellate court should take additional evidence if SSA belatedly fulfils its statutory obligation. County counsel has misconstrued the *A.R.* opinion.

In *A.R.,* this court plainly stated SSA and the court's failure to comply with its duties under ICWA is presumed to be prejudicial. "[A] rule requiring reversal in all cases where ICWA requirements have been ignored is consistent with the recognition that parents are effectively acting as 'surrogate[s]' for the interests of Native American tribes when raising this issue on appeal." (*A.R., supra,* 77 Cal.App.5th at p. 207.) This court

10

did not carve out an exception to the "clear rule of reversal" in cases where SSA belatedly starts an ICWA investigation.

To the contrary, in the last section of the *A.R.* opinion, this court analyzed why implementing a clear rule of reversal will not run afoul with the goal of prompt resolution of dependency cases. This court explained any delay created by reversal will not be a significant one. We anticipated that after establishing "a clear rule that requires reversal in all cases" there would be no reason for SSA not "to conduct such an inquiry at its earliest opportunity to do so." (*A.R., supra,* 77 Cal.App.5th at p. 207.) In other words, because we have eliminated the possibility of a "harmless error" ruling, SSA can start fulfilling its statutory obligation as soon as it has notice of error. As we observed in the *A.R.* opinion, SSA can likely complete its ICWA obligation before the briefing on appeal is complete, resulting in very little delay when the matter is remanded to the juvenile court.

This case involved errors by both the juvenile court and SSA regarding ICWA obligations. Whether SSA complied with its inquiry duty under ICWA should be considered by the juvenile court in the first instance. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 703 ["Making the appellate court the trier of fact is not the solution"].) And as mentioned, SSA's remedial efforts do not supplant the court's own ICWA obligations. For all the above reasons, we deny county counsel's request we consider additional evidence.

DISPOSITION

The judgment is conditionally reversed and remanded to the juvenile court for the limited purpose of allowing SSA to comply with the ICWA. After complying with applicable inquiry and notice requirements, if it is determined that ICWA does not

11

apply, the court's judgment shall be reinstated.  County counsel's request we consider additional evidence is denied.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.