Filed 2/10/23 In re T.C. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re T.C., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080529 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4570) |
| v. | |
| T.C. et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge. Conditionally reversed and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant, T.C.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant, C.H.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

T.C. (Father) and C.H. (Mother) appeal the juvenile court's order terminating their parental rights to their son, T.C., under Welfare and Institutions Code[1] section 366.26. The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate initial inquiry under section 224.2 into T.C.'s possible Native American ancestry, as defined by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). The Agency concedes error but contends that remand for additional investigation is unnecessary because it subsequently conducted further inquiry in cases involving the same parents and T.C.'s full siblings, K.C. and C.H., which showed T.C. was neither enrolled nor eligible for membership in the identified tribes. In a separately filed motion, the Agency requests that we augment the record with documents from these cases that demonstrate the Agency's further inquiry efforts with extended family members and the tribes. The Agency submits that the augmented record would show that the ICWA errors in this case have been rendered moot or harmless.

As we shall discuss, we agree that the Agency and juvenile court erred, deny the augmentation request, conclude that the initial inquiry errors were prejudicial, conditionally reverse the termination order, and remand the matter for further proceedings.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

In October of 2020, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of then three-month-old T.C., alleging that the parents repeatedly exposed him to violent confrontations, and that Mother continued to allow Father to care for T.C. despite Father's ongoing abuse of methamphetamine. At about the same time, a social worker completed an ICWA-010(A) form, indicating that the Agency had spoken with both parents and had no reason to believe the child was an Indian child.

Mother, Father, and the maternal grandfather participated in the subsequent detention hearing. Counsel for Mother indicated that Mother had "no Native American Indian heritage," and that she would submit the appropriate form to the court at a later date. There is no indication in the record that Mother ever submitted an ICWA-020 form.

Counsel for Father also stated that his client denied any known Native American ancestry. The court did not ask the maternal grandfather whether he had any reason to believe T.C. had Indian heritage. The court then determined that the ICWA did not apply.

It appears from the record that the Agency conducted no further ICWA inquiries after this hearing. Several of the Agency's subsequent reports simply indicate that "[o]n 10/15/2020, the [c]ourt found that the Indian Child Welfare Act does not apply." The juvenile court also did not further address T.C.'s potential Indian ancestry.

---

[2] Because the parents' sole contention on appeal challenges the Agency's and the juvenile court's compliance with their section 224.2 inquiry duties, we limit our discussion of the facts and procedural history to information necessary to determine those issues.

On December 16, 2020, the juvenile court sustained the petition, as amended (the allegations remained substantially the same).

In the course of investigating T.C.'s case, the Agency communicated with the maternal grandfather, the maternal grandmother and her husband, a maternal uncle, the paternal grandmother, and the paternal great-grandmother regarding various issues including safety planning, providing temporary childcare, and possible placement of T.C. The Agency also sent letters to the maternal grandmother and paternal grandmother, as well as nine additional relatives, asking if they would be interested in placement. Although the letters are not included in the record, the Agency's jurisdiction/disposition report summarizes the placement-related information relayed to these individuals. The summary does not include any ICWA-related inquiries. Nor is there any indication elsewhere in the record that the Agency ever asked any of these relatives about T.C.'s possible Native American ancestry.

On January 20, 2022, the Agency placed T.C. and his sibling, K.C., with caregivers who seek to adopt T.C. The court terminated Mother's and Father's parental rights on June 8, 2022, at a contested section 366.26 hearing. Father and Mother separately filed timely appeals from the order, challenging only the court's ICWA finding, made at the time of the detention hearing.[3]

---

[3] Neither parent appealed from the juvenile court's October 2020 detention order in which the court expressly found that ICWA did not apply. Ordinarily, "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) However, because the duty of inquiry under ICWA is a *continuing* one, the one-shot rule does not apply here. (See § 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 6 (*Isaiah W.*) ["Because ICWA imposes on the juvenile

DISCUSSION

## I. *Governing Law*

Congress enacted the ICWA to address rising concern that Indian children were being separated from their tribes through adoption or foster care and placed with non-Indian families. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 7.) California subsequently enacted its own statutes specifying the steps the Agency and juvenile courts are required to take to determine whether a child is an Indian child before making placement decisions. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*In re D.S.*).) Under these statutes, the juvenile court and the Agency have an "affirmative and continuing duty to inquire" during dependency proceedings whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*In re D.F.*).)

The Agency's initial inquiry duty, which is at issue in this appeal, includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-

court a continuing duty to inquire whether the child is an Indian child, we hold that the parent may challenge a finding of ICWA's inapplicability in an appeal from the subsequent [termination of parental rights] order, even if she did not raise such challenge in an appeal from the initial [detention] order"].)

5

law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

If the initial inquiry reveals a reason to believe the child is an Indian child, then further inquiry into whether there is a reason to know the child is an Indian child is required. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.) If there is reason to know that a child is an Indian child (§ 224.2, subd. (d)), then notice must be sent to the pertinent tribe to allow the tribe to make a determination regarding the child's tribal membership. (*In re D.F.*, at pp. 567–568.)

We review ICWA findings for substantial evidence, "[b]ut where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

## II. *Analysis*

### A. *Insufficient Initial ICWA Inquiry*

In this case, the parents assert, and the Agency concedes, that the Agency failed to comply with its initial ICWA inquiry obligations under section 224.2 because it did not question the extended family members available to it about possible Native American ancestry. We agree.

Over the course of the dependency proceedings, the Agency failed to take advantage of many opportunities to make ICWA inquiries of readily available relatives. The Agency had telephonic contact with the maternal grandfather, the maternal grandmother and step-grandfather, a maternal uncle, and the paternal grandmother, but did not ask any of these extended family members whether the child "[was] or may be an Indian child" as required in an initial ICWA inquiry. (§ 224.2, subd. (b); *In re Benjamin M.*

6

(2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*) [failure to ask father's known relatives about possible Indian ancestry violated ICWA requirements].) The Agency also spoke with the paternal great-grandmother without inquiring about Indian ancestry. Although great-grandparents do not fall within the definition of "extended family members," the duty of inquiry also extends to "others who have an interest in the child . . . ." (§ 224.2, subd. (b); see also *In re Dominick D.* (2022) 82 Cal.App.5th 560, 564, fn. 2, 567 [requiring initial inquiry of a maternal great-grandfather who served as the dependent's caregiver because he was included under "others who have an interest in the child"]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 (*In re S.R.*) ["[t]he statute obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child' "].) In this case, both parents requested that the Agency evaluate the paternal great-grandmother as a placement option. She initially declined to be considered, but volunteered to speak with her daughter about possibly taking T.C. Later, she called back and requested that the Agency assess her for placement. Thus, the paternal great-grandmother demonstrated an obvious interest in the child and should have been questioned by the Agency as to whether she was aware of any Indian ancestry. Finally, although the Agency sent placement letters to nine other relatives, it does not appear the letters included any ICWA inquiries. As a result, we are left to conclude that the Agency did not satisfy its inquiry duties.

The juvenile court also did not fully comply with its ICWA inquiry obligations. "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or *has reason to know* that the child is an Indian child" (§ 224.2, subd. (c), italics added), and "[o]rder the parent . . . to complete" the ICWA-020 form. (Cal.

7

Rules of Court, rule 5.481(a)(2)(C).) [4] Here, although Mother's counsel indicated that Mother would submit the appropriate form later, the juvenile court did not order the parents to complete the ICWA-020 form. Nor did the court inquire of the maternal grandfather at his first appearance at the detention hearing whether he knew or had reason to know that T.C. is an Indian child.

In sum, because neither the Agency's nor the court's initial ICWA inquiries were adequate, we conclude there is insufficient evidence to support the juvenile court's finding that ICWA did not apply. Such an error requires reversal if we find that the error was prejudicial. (*Benjamin M., supra*, 70 Cal.App.5th at p. 742.)

The Courts of Appeal have applied varying analytical frameworks to evaluate whether ICWA initial inquiry errors are prejudicial or harmless. We need not address these various approaches because this division has adopted the approach articulated in *Benjamin M., supra*, 70 Cal.App.5th 735. (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916 (*In re Y.M.*).) Under this approach, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.,* at p. 744.) This "standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 679 (*Ricky R.*); *id.* at p. 680 [applying *Benjamin M.* standard and finding reversible initial

_____

[4]     All further references to rules are to the California Rules of Court.

inquiry error where agency "asked the parents about Indian ancestry" but "failed to ask extended family members about it"].)

On this record, we cannot say the Agency's failure to comply with its initial inquiry duties was harmless. Extended family members and a relative with an interest in the child—including the maternal grandfather, maternal grandmother, maternal step-grandfather, maternal uncle, paternal great-grandmother, and paternal grandmother—were readily available, and their responses would likely have borne meaningful information, regardless of the outcome of the inquiry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Furthermore, the fact that the parents denied any Indian heritage does not relieve the Agency of its "broad duty" to inquire of readily ascertainable extended family members whether the child was an Indian child. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) A contrary rule would "ignore[ ] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*; *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . , even though the children's great-grandmother was a member"]; see also *In re T.G.* (2020) 58 Cal.App.5th 275, 295 [noting that ICWA's "expansive" duty of inquiry "is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers . . . , may well have lost the ability to convey accurate information regarding their tribal status"].) Accordingly, we conclude that the Agency's error was prejudicial.

B.     *Motion to Augment the Record*

By separate motion, the Agency moves to augment the record with information obtained during the ICWA inquiries the Agency conducted in dependency cases involving T.C.'s full-siblings, K.C. and C.H. The Agency

contends that these additional documents demonstrate that remanding the case for further inquiry would be futile, thus rendering the case moot or the error harmless.

According to the Agency, both the Agency and the juvenile court conducted an initial inquiry with the parents in C.H.'s case. The court also questioned the paternal grandfather directly during C.H.'s detention hearing. At the same hearing, Mother apparently claimed ancestry with the "Taino" tribe, and said she was waiting to hear from other family members about additional tribal ancestry. The paternal grandfather believed his grandfather was " 'half-Indian' " and his great-grandmother was " 'all Indian,' " and Father opined that T.C.'s grandmother or great-grandmother might have further information.

The Agency then prepared a jurisdiction/disposition report documenting its further inquiry efforts with the tribes as well as its discussions with various extended family members. At a subsequent hearing, the court ordered Father to complete the ICWA-020 form. It is not clear from the Agency's motion whether the Agency or the juvenile court ever followed up on the ICWA information in C.H.'s case, and it does not appear the court ever made a finding as to C.H.'s ICWA status.

In K.C.'s case, it is not apparent from the motion whether the Agency and the court conducted their own initial inquires or whether they built off the proceedings involving C.H. The Agency references only a summary of two special hearings in K.C.'s case during which the court evaluated the Agency's further ICWA inquiry with the family, its notices to the tribes, and the tribes' responses. At some point, the Cherokee Nation sent a response requesting the middle name and date of birth of the maternal grandfather. The Agency provided it and received word from the tribe's enrollment designee that none

of the family members were eligible to enroll in the tribe. The Agency noted that the juvenile court found that reasonable inquiry had been made as to whether K.C. was an Indian child, and that the court concluded that ICWA did not apply.

Mother responds that augmentation is not appropriate because the materials were not before the trial court and it is for the juvenile court, not the appellate court, to decide questions of fact. Father did not oppose the motion.

"It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 (*Zeth S.*).) Under certain circumstances, a reviewing court may "take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal" and may make factual determinations, particularly when doing will result in final disposal of a matter in a single appeal without further proceedings in the trial court. (Code Civ. Proc., § 909.) However, this authority "should be exercised sparingly" and only under "exceptional circumstances." (*Zeth S.*, at p. 405 [noting that "[t]here is no blanket exception to the general rule for juvenile dependency appeals"].)

We do not believe that such exceptional circumstances exist in this case. Indeed, if this case is exceptional, then nearly all cases in which the Agency belatedly conducts the required ICWA inquiry and seeks to

11

supplement the appellate record will qualify.[5]  Here, the Agency asks us to augment the record with 180 pages of additional information.  The records include a detention hearing transcript, Mother's ICWA-020 form, Agency reports, and court minute orders filed in two separate cases involving two different children.  None of the material has been filed in the juvenile court in T.C.'s case.  It is not the province of appellate courts to sift through a voluminous collection of documents that were filed piecemeal in two different cases, weigh the evidence, and decide whether the Agency conducted a sufficient ICWA inquiry.  (Cf. *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 703 ["[m]aking the appellate court the trier of fact is not the solution"].)  Rather, "[i]t is a trial court function to receive evidence of the [Agency's] notice efforts and to determine if they measure up to ICWA standards."  (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 852.)  If the Agency is to concede ICWA inquiry and notice error, the better practice is for the parties to "stipulate to a conditional ICWA reversal and an immediate issuance of the remittitur."  (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 683.)

The Agency nonetheless argues that we should accept the additional evidence because it is not being offered for the purpose of reversing the court's order on substantive grounds, but to demonstrate a lack of prejudice.  Because the Agency contends the subsequent ICWA inquiry evidence shows there is no reasonable likelihood of a different outcome should the case be

[5]    How appellate courts should handle this issue may eventually be answered.  Our Supreme Court recently granted review of a case to consider the question of whether an appellate court may take additional evidence to remedy the failure of the child welfare agency and the trial court to comply with the inquiry, investigation, and notice requirements of the ICWA (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.), and if so, what procedures must be followed.  (See *In re Kenneth D.* (2022) 82 Cal.App.5th 1027, 1030 review granted Nov. 30, 2022, S276649.)

remanded, it submits that augmentation promotes the strong policy of resolving dependency cases expeditiously. In support of this point, the Agency relies on *In re A.B.* (2008) 164 Cal.App.4th 832 (*In re A.B.*) and *In re Z.N.* (2009) 181 Cal.App.4th 282 (*In re Z.N.*).

While posttermination[6] evidence has been considered by appellate courts under limited circumstances, we do not believe that these cases require us to consider it in this matter. Our review reveals that the appellate courts in *In re A.B.* and *In re Z.N.* augmented the record or took judicial notice of subsequent ICWA inquiries because the results definitively showed that the child would *not* be eligible for tribal membership. (*In re A.B.*, *supra*, 164 Cal.App.4th at p. 843 [augmenting the record to include the mother's Parental Notification of Indian Status form from a half-sibling's case which, together with the father's form denying Indian heritage, showed *A.B.* had no such ancestry]; *In re Z.N.*, *supra*, 181 Cal.App.4th at p. 301 [judicially noticing tribal notification letters and responses filed in the cases of two half-siblings that showed the children were not members or eligible to be such].) In that situation, even a limited remand would be "an empty exercise with a preordained outcome," would not further the strong policy favoring resolving dependency cases expeditiously, and would not benefit tribes. (*In re Z.N.* at p. 301.)

We do not believe the outcome of further ICWA inquiry is clearly preordained here. Unlike in *In re A.B.* where the court augmented the record with one document disclaiming Indian heritage, the instant case involves 180 pages of documents that were assembled because both parents *claimed* Indian ancestry. As the *In re A.B.* court acknowledged, "[w]hen a parent

---

6     We refer to evidence obtained after the juvenile court issued its order terminating parental rights.

indicates he or she may have Indian heritage, ' "it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child." ' " ( *In re A.B., supra,* 164 Cal.App.4th at p. 843.)[7]

Furthermore, we have concerns about the completeness of the ICWA inquiries conducted in C.H. and K.C.'s cases. From what is before us, it appears the court in C.H.'s case was not yet satisfied that the ICWA inquiry was complete. The briefing also does not make clear the Agency's basis for providing further notice to the Blackfeet tribe. Initially, the Agency listed the *paternal* grandmother as the individual who suspected the family had Blackfeet heritage. The Agency asserts that a social worker "began further inquiry correspondence with the Blackfeet tribe on October 20, 2022," but that the tribe had not responded by December 14, 2022, when the court in

---

[7] This case is also distinguishable from *In re A.B.* because, whereas the agency in *In re A.B.* filed the new evidence in the juvenile court evaluating *A.B.*'s case before seeking to augment the record on appeal, there is no indication that any of the proffered documents in this case have been filed in the court below. This is relevant because we are not convinced that we may augment the record with documents that were not filed in the case below. (See *People v. Brooks* (1980) 26 Cal.3d 471, 484 ["[t]he function of the augmentation procedure is to supplement an incomplete but existing record . . . [a]ugmentation is not available, however, for the purpose of adding material that was not a proper part of the record in the trial court"]; cf. *Kenneth D., supra,* 82 Cal.App.5th at p. 1031 review granted Nov. 30, 2022, S276649 [augmenting the record where the child welfare department filed the document *in the juvenile court below*]; *In re A.B., supra,* 164 Cal.App.4th at pp. 839, 843 [same].) The Agency's motion is filed pursuant to rules 8.155(a)(1)(A), (a)(1)(B), and (a)(2), as well as 8.340(c), of the California Rules of Court. Rule 8.155(a)(1)(A) pertains to "[a]ny document filed or lodged *in the case* in superior court" (italics added) and none of the other rule provisions suggest that they apply to documents lodged in other cases or other courts. Moreover, even if the Agency had filed the proffered documents in the court below, the motion to augment is untimely under rule 8.416(d)(2), and the Agency has not provided "an exceptional showing of good cause" (rule 8.416(f)) to excuse the delay.

14

K.C.'s case made its ICWA determination. However, on December 8, 2022, the Agency again contacted the Blackfeet tribe, this time providing the *maternal* grandfather's full name and date of birth. It is not evident from the Agency's briefing if Mother subsequently heard back from relatives about possible Blackfeet ancestry or if the Agency simply provided this information at the same time it provided it to the Cherokee Nation out of an abundance of caution. And, because the Blackfeet tribe has not responded to either inquiry, we cannot rely upon a definitive tribal response. (See § 224.2, subd. (h) ["[a] determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive"].) The United Keetoowah Band of Cherokee tribe also has not yet responded, though the Agency argues that a social worker's notation implies the tribe "received and/or responded to the Agency's correspondence." Ultimately, given the number of omissions and uncertainties in this submission, we cannot confidently conclude that T.C. would not be eligible for tribal membership.

Although we do not wish to delay permanency for T.C., taking additional evidence pursuant to Code of Civil Procedure section 909 is generally warranted only when doing so will finally dispose of a matter in a single appeal without further trial court proceedings. (Code Civ. Proc., § 909.) Even if we were to consider the supplemental records, we do not believe they are sufficient to allow us to fully resolve the matter. Therefore, we deny the Agency's motion to augment the record.

15

Because the documents from C.H. and K.C.'s cases are not before us, there is no basis for dismissing the appeal as moot.

DISPOSITION

The June 8, 2022 order terminating parental rights under section 366.26 is conditionally reversed. The matter is remanded to the juvenile court with directions that, within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the initial inquiry provisions of section 224.2, subdivision (b), and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that T.C. is an Indian child, the order issued at the June 8, 2022 contested section 366.26 hearing shall be reinstated by the juvenile court. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that T.C. is an Indian child, the court shall proceed accordingly.

HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

17