Filed 3/22/24  In re Nathan S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re NATHAN S. et al., Persons Coming Under the Juvenile Court Law. | C098662 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.D. et al., Defendants and Appellants. | (Super. Ct. Nos. STK-JD-DP-2020-0000404, STK-JD-DP-2022-0000029) |

M.D. (mother) and N.S. (father), parents of minors Nathan S. and E.S., appeal from the juvenile court's orders terminating parental rights and freeing the minors for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; statutory section citations that follow are to the Welfare and Institutions Code unless otherwise stated.)  The parents' sole contention on appeal is that the San Joaquin County Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.  The

1

Agency argues the ICWA inquiry was adequate as to mother, but agree remand is necessary for further inquiry as to father.

We conclude that remand for further ICWA compliance is necessary. We will conditionally affirm the orders terminating parental rights subject to full compliance with the ICWA on remand, as described in this opinion.

FACTS AND HISTORY OF THE PROCEEDINGS

In October 2020, mother and father were stopped in Nevada after leaving a known drug house where mother had purchased methamphetamine with two-year-old Nathan S. present; mother was cited, and father was arrested for outstanding felony warrants among other things. Nathan was temporarily detained in protective custody in Nevada after mother and father both stipulated that they were unable to care for him. San Joaquin County later assumed dependency jurisdiction in the case.

*A. Dependency Petition for Nathan*

In November 2020, the Agency filed a section 300 petition on behalf of Nathan, based on failure to protect (§ 300, subd. (b)) and no provision for support (§ 300, subd. (g)). The petition alleged the parents had a history of untreated substance abuse as well as several domestic violence episodes while Nathan was present, which increased Nathan's risk of emotional damage and physical abuse and neglect. Mother was also six weeks pregnant with father's child, and had untreated mental health issues that impacted her ability to responsibly care for Nathan, who primarily resided with his maternal grandmother. Neither mother nor father had stable or suitable housing.

The Agency's November 2020 detention report stated the Agency had asked mother if she had any knowledge of Native American ancestry, whether she had any family members who possessed a tribal membership card or who had ever lived on tribal land, or whether any family members suspected that they had Native American ancestry. Mother responded, "no" to all three inquiries. While mother provided the Agency with

2

names of the maternal grandparents, father did not provide any information regarding his relatives. Mother signed a Notification of Indian Status Form (ICWA-020) indicating that none of the Indian status factors on the form applied. The detention report stated there was "no reason to believe" Nathan was an Indian child under the ICWA.

At the detention hearing in November 2020, the juvenile court declared father to be an alleged father, detained Nathan, and placed him with his maternal grandparents. During the hearing, the juvenile court asked mother if she had any Native American heritage, and mother responded that she did not. When asked if she knew whether father had any Native American heritage, mother responded that she was not aware of any such heritage. Father was not present at the hearing because he was still incarcerated in Nevada.

During a hearing in December 2020, father denied having any Native American heritage. The juvenile court ordered both mother and father to participate in drug court and set a jurisdiction hearing the following month.

A January 2021 jurisdiction report stated that mother signed an ICWA-020 form on October 28, 2020, declaring that she had no Native American ancestry. The Agency had mailed an ICWA-020 form to father while in jail, and father had signed and returned the form in November 2020 denying any Native American ancestry. Based on the parents' responses, the Agency said it had no reason to believe Nathan was an Indian child within the meaning of the ICWA. The proposed findings and orders attached to the jurisdiction report, however, did not discuss or otherwise address the ICWA.

Father failed to appear at the noticed jurisdiction hearing in January 2021, and the juvenile court found the petition allegations true as to him. The juvenile court continued jurisdiction as to mother.

An amended jurisdiction report and a second amended jurisdiction report, both filed in February 2021, reported no change in ICWA information, and the attached proposed findings and orders did not reference ICWA.

3

At the continued jurisdiction hearing, mother submitted on the petition as amended, the juvenile court found the amended petition allegations true, adopted the Agency's proposed findings and orders, and set the matter for disposition in March 2021. The juvenile court did not ask mother about Native American ancestry during the hearing or otherwise make oral ICWA findings.

The Agency recommended that the juvenile court offer mother, but not father services (§ 361.5, subd. (a)). At the time, father was incarcerated in Solano County. The March 2021 disposition report again stated there was no reason to believe Nathan was an Indian child under ICWA, citing the same information contained in the prior reports. The report's proposed findings and orders did not reference the ICWA.

During an interview with a social worker, mother reported on her family background, including that her parents were married and that she had four siblings with whom she kept in touch, although the relationship with her mother was "hectic" and the relationships with some of her siblings were strained. She visited with Nathan at the maternal great-grandmother's house. Mother's second child with father was due in June 2021. Given his incarceration, father completed a family history questionnaire rather than an interview. Father disclosed that his parents were married and he had a younger brother, but he did not provide any information regarding his relationship with his parents or his sibling.

At the disposition hearing in April 2021, mother was present, but father was not because he remained incarcerated. Mother submitted on disposition, and father's counsel opposed the Agency's recommendations. The juvenile court adjudged Nathan a dependent child, removed him from his parents' custody, bypassed father for services, and ordered services for mother, including counseling, parenting classes, and substance abuse treatment. The juvenile court did not address the ICWA or otherwise make any ICWA findings at the hearing. The matter was set for further review in September 2021.

4

In June 2021, mother gave birth to E.S., her second child with father. Mother had custody of E.S. after her birth.

A September 2021 status review report recommended continuing services to mother because she had made substantial progress in her case plan. The report discussed the parents' previous denials of Native American ancestry and reiterated the Agency's position that there was no reason to believe Nathan was an Indian child within the meaning of the ICWA. The proposed findings and orders did not address the ICWA. At the review hearing, the juvenile court continued Nathan as a dependent, ordered mother to drug test, and adopted the social worker's proposed findings and orders.

B.      *Dependency Petition for E.S.*

In January 2022, the Agency filed a dependency petition on behalf of six-month-old E.S., alleging failure to protect (§ 300, subd. (b)) and abuse of sibling (§ 300, subd. (j)) based on mother and father's substantial history of unresolved domestic violence and substance abuse issues and the pending dependency case for Nathan. According to the detention/jurisdiction report, mother had relapsed on drugs. While she denied using drugs, she had several drug patches test positive for methamphetamine. Given mother's relapse and that father had already been bypassed for services in Nathan's dependency case, the Agency recommended detaining E.S. from her parents.

Regarding the ICWA, the detention/jurisdiction report stated that, in November 2021, mother reported having no Native American ancestry and signed an ICWA-020 form accordingly. Although the social worker was scheduled to meet with father on December 6, 2021, father failed to appear at the meeting nor had he responded to any attempts to contact him. In January 2022, mother reported that she was unsure of father's Native American ancestry. Based on the above, the Agency reported there was "no reason to believe the minor [was] an Indian Child within the meaning of the [ICWA]."

5

The juvenile court detained E.S. following a hearing in January 2022, and placed her with the maternal grandparents with Nathan.  Mother was present but father was not, although both were represented by counsel.  While no ICWA issues were discussed at the hearing, the minute order states that the juvenile "Court inquired and the parent/guardian were advised of Indian Heritage requirements and given the ICWA-020 form."

In February 2022, father failed to appear for the noticed jurisdiction hearing and the juvenile court proceeded in his absence, finding the allegations in the petition regarding E.S. true as to him.  Mother contested jurisdiction and the matter was set for hearing the following month.

In a March 2022 jurisdiction report, the Agency reported that since E.S.'s birth in June 2021, mother had had several drug patches test positive for methamphetamine, and father had never appeared in E.S.'s dependency case.  The report stated there was no reason to believe E.S. was an Indian child within the meaning of the ICWA because mother had signed an ICWA-020 indicating she had no Native American ancestry and that father had previously indicated in Nathan's dependency case that he had no Native American ancestry.

On March 17, 2022, the Agency also filed a status review report regarding Nathan, stating as before that there was no reason to believe Nathan was an Indian child because both mother and father had denied Indian ancestry on their respective ICWA-020 forms.  The attached proposed findings and orders did not reference or otherwise discuss the ICWA.

According to the status report, the Agency had had no contact with father while mother had made adequate progress in her case plan and services.  The Agency therefore recommended that the juvenile court continue reunification services for mother as there was a substantial probability of reunification by 18 months from removal.

6

At a hearing in March 2022, the juvenile court adopted the Agency's proposed findings and orders as to Nathan and continued services for mother. The court set a contested jurisdiction hearing for mother on E.S.'s dependency petition.

At the contested jurisdiction hearing in April 2022, mother through counsel denied using methamphetamine and disputed the positive drug patch test results, but submitted on jurisdiction on the petition allegations as amended. The juvenile court found the amended petition true. The ICWA was not discussed during the hearing.

In May 2022, the Agency filed a status review report for Nathan, recommending the juvenile court terminate reunification services for mother. Mother had several positive drug tests and had been terminated from drug court; she also continued to be in contact with father despite their significant history of domestic violence. The report contained the same ICWA information as prior reports and stated that there was no reason to believe Nathan was an Indian child. The attached proposed findings and orders did not reference the ICWA.

The Agency filed a disposition report for E.S. in May 2022, recommending that no services be provided to either parent and that adoption be selected as her permanent plan. The report contained no new ICWA information, and the Agency still maintained there was no reason to believe E.S. qualified as an Indian child under the ICWA. The proposed findings and orders attached to the report did not address the ICWA.

Father was present at a hearing on E.S.'s petition for the first time in June 2022. During the hearing, the juvenile court asked father whether he had any Native American heritage. Father responded, "Not sure. Not sure." The juvenile court asked: "Is there any relative that you could ask? Mother? Father? Aunts? Uncles?" Father replied, "I'm going to say no." The court continued, "Okay. But if you could ask them," and father responded, "Yeah." The court then explained, "That's something we have to ask all parents. If you are enrolled or eligible to be enrolled, then they may have a right to participate." Father was ordered to drug test, but mother, having previously been

7

terminated from drug court for failure to comply, refused and the court deemed her refusal an administrative positive.

At a July 2022 combined status review/disposition hearing for the children, the juvenile court addressed presumed father issues related to E.S.  The court denied father's request for presumed father status although he remained a biological father.  Mother acknowledged she needed to work on unidentified "things" and submitted as to both the status review and disposition.

The juvenile court found E.S. to be a dependent child, removed her from the custody of her parents, bypassed father for services (§ 361.5, subd. (a)), and denied reunification services to mother under section 361.5, subdivision (b)(13).  The court continued Nathan as a dependent child and terminated reunification services for mother.  The court set a section 366. 26 hearing to select a permanent plan for both children.

Father filed a writ petition challenging the order setting the section 366.26 hearing, which this court denied on the merits.

While the children were currently placed together with the maternal grandmother, she had indicated that she would not be able to care for both children.  Counsel then told the juvenile court that the children may have to be sent to different homes.  Father objected, and asked the juvenile court to inquire whether the paternal grandmother would be willing to take both children; counsel provided her name and telephone number to the court.  In August 2022, E.S. was moved to the home of a nonrelated extended family member who was willing to adopt her, and she maintained weekly visits with Nathan.

In November 2022, the Agency filed separate section 366.26 reports for Nathan and E.S., each recommending the juvenile court terminate parental rights to permit the children to be placed for adoption, with the maternal grandparents for Nathan and the nonrelated extended family member for E.S.  The reports noted mother had stopped visiting in August 2022 and had not seen the children since that time, although she

8

contacted the social worker in October to resume visits. Father had visited inconsistently or not at all throughout the dependency proceedings.

According to the section 366.26 reports, there was no reason to believe Nathan or E.S. was an Indian child within the meaning of the ICWA based on the respective ICWA-020 forms executed by mother and father denying Native American ancestry. The proposed findings and orders attached to the reports did not address the ICWA.

Status review reports filed in November 2022 recommended that the children's case plans continue to be adoption by their respective caregivers. The reports contained no new ICWA inquiry information, and the attached proposed findings and orders did not address the ICWA.

After several continuances due to father's incarceration, the juvenile court conducted the section 366.26 hearing in May 2023. Mother inexplicably failed to appear at the hearing, but father was present. The juvenile court denied mother's counsel's contested request for a bonding study.

During the hearing, father's counsel informed the juvenile court that, earlier that day, the social worker had informed her that father had not signed an ICWA-020 form regarding E.S. Apparently, father had then told his counsel that he believed E.S. may be entitled to membership in a Cherokee tribe and executed an ICWA-020 form to that effect. According to the form, father did not know which Cherokee tribe, but he stated that the paternal grandmother should know. In response, the juvenile court asked defense counsel to provide the paternal grandmother's contact information, but otherwise did not address defendant's ICWA claim further.

The juvenile court proceeded to terminate parental rights as to both Nathan and E.S. and selected adoption as their permanent plan. The court did not make any ICWA findings during the hearing. Mother and father each timely appealed as to both children.

Following termination of parental rights, the Agency filed supplemental status reports on May 24, 2023, which reported that there was no reason to believe either

9

Nathan or E.S. were Indian children but that given father's claim at the section 366.26 hearing that E.S. may be eligible for membership in an unknown Cherokee tribe, the social worker completed an ICWA-030 form to notify all federally recognized tribes in May 2023. The attached proposed findings and orders did not address the ICWA, and none of the notices or responses, if any, are included in the record on appeal.

## DISCUSSION

Mother contends that, although she and father were asked about and both initially denied Native American ancestry (although father later claimed Native American ancestry through an unidentified Cherokee tribe), the Agency and the juvenile court nonetheless failed to fully comply with the inquiry requirements of the ICWA because known extended maternal and paternal relatives were not asked about possible Native American ancestry. To the extent we reverse the order terminating parental rights as to father, mother asserts we should do the same for her. Father joins mother's arguments. We agree further ICWA compliance is required.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review

10

granted Oct. 12, 2022, S276056, briefing deferred.) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b).)

However, we review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence to support the juvenile court's findings.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)  Thus, a precursor to addressing such a claim on appeal is the required finding by the juvenile court that the Agency has complied with the laws and its obligations and that the ICWA does not apply.  It does not appear the juvenile court made the requisite findings to allow for review.

Here, while both mother and father denied having Indian ancestry and the Agency's reports repeatedly stated that there was no reason to believe either Nathan or E.S. were Indian children, none of the reports' proposed findings and orders addressed ICWA or its applicability or otherwise recommended ICWA findings.  The juvenile court, moreover, never found that the Agency's ICWA inquiry efforts were adequate or that ICWA did or did not apply before terminating parental rights.  And while the Agency allegedly notified some tribes post-termination that father had disclosed potential Native American heritage in an unidentified Cherokee tribe, the record does not include any notices or responses received, if any.

The juvenile court had a duty to ensure the Agency made appropriate inquiries and then make findings as to the Agency's compliance with its obligations and the applicability of the ICWA based on the results of all inquiries, including the court's own. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 319 ["ICWA and the corresponding provisions of California law impose an affirmative and continuing duty on the juvenile court to inquire whether the child is an Indian child"].)  The juvenile court's failure to do so here was error.  (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.)  Because the juvenile court did not make a finding on the subject as to either child, we

have no ICWA findings and orders to review and any remarks we would make on the adequacy of the Agency's inquiry and notice would be nothing more than advisory. (See *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We . . . abide by . . . a ' "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" ' "].) Accordingly, we remand the matter for further ICWA compliance and for the juvenile court to enter an ICWA finding based on the Agency's demonstration of inquiry and notice.

## DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion. If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing. (25 U.S.C. § 1914; § 224, subd. (e).)

_____

HULL, J.

We concur:

_____

EARL, P. J.

_____

WISEMAN, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.